[No. 4043.]

## THE CACHE LA POUDRE RESERVOIR CO. v. THE WATER SUPPLY AND STORAGE CO. ET AL.

WATER RIGHTS—APPROPRIATIONS FOR MILL PURPOSES—ABANDON-
MENT—PRIORITIES FOR STORAGE.

Where water appropriated for mill purposes, after its use is permitted
to flow back into the stream undiminished and is appropriated
during the winter season for storage in a reservoir for future use
in irrigation, the storage appropriator acquires a prior right to the
water during the season he has appropriated it that cannot be de-
feated by a change of use by the mill owner either by transfer-
ring his right or by abandonment in favor of another appropriator.
In case of abandonment by the mill owner the water inures to the
benefit of appropriators below the mill ditch according to priority
and the storage appropriator below the mill ditch is entitled to the
water in preference to a prior appropriator for the same purpose
whose point of diversion is above the mill ditch but whose appro-
priation is junior to the appropriation for mill purposes.

*Appeal from the District Court of Larimer County.*

Mr. H. N. HAYNES, for appellant.

Messrs. ROGERS & SHAFROTH and Mr. JAMES W. MC-
CREERY, for appellees.

CHIEF JUSTICE CAMPBELL delivered the opinion of the
court.

This is a controversy between owners of reservoirs which
are used for storing water for purposes of subsequent irriga-
tion of agricultural lands. This is the second time the case
has been here. The former decision was upon a demurrer
to the complaint—the opinion reported in 25 Colo. 161—in
which it was held, contrary to the ruling of the trial court,
that the complaint stated a cause of action. The judgment
of the district court was reversed and the cause remanded,

with instructions that if further proceedings be had they be in accordance with the views expressed in the opinion. When the case again reached the district court, the defendant water company filed an answer, which put in issue the material averments of the complaint, and set up, by way of cross-complaint, defendant's claim of seniority. A replication was filed, and upon the issues joined in a trial before the court there was a finding for the defendant, and the complaint was dismissed; from which judgment the reservoir company has appealed to this court.

In the opinion above referred to will be found a full statement of the case as made by the complaint. That statement will not now be repeated, but only so much of it given as will elucidate the points determined.

The reservoir of the appellant company is fed by a ditch taking water from the Cache La Poudre river some distance below the headgate of the feeder which supplies the reservoir of appellee water company. Between them is the headgate of a ditch owned by the Colorado Milling & Elevator Company, which diverts sixty cubic feet of water per second of time from the river for the purpose of furnishing motive power to a flouring mill owned by the milling company; and this priority is senior to any appropriation claimed by either reservoir owner. After the water diverted into the mill race performs its function of propelling the mill machinery, it has always been turned back into the natural channel of the river. In 1892, the reservoir company, going upon the stream and finding that such was the case, made its diversion from the river below the point of discharge of the mill race, constructed its reservoir, and for several years thereafter, without interruption, filled the same with water thus diverted. The water company had made an appropriation for storing water in its several reservoirs before the time the reservoir company began its work of construction upon its appliances; and had received a decree of court in proceedings properly brought for determining that question, which awarded to it a priority

of right for storing water in its reservoirs, which antedated the beginning of work by the reservoir company.

It is now contended by appellant that the trial court entirely misconceived our previous decision in the case at bar; while it is the contention of appellee that that decision stated the law of the case only upon the hypothesis that the facts were as stated in the complaint and admitted by the demurrer upon the former hearing; but since, in the trial of the issues of fact had after the cause was remanded, the findings of the trial court were in favor of defendant—appellee here—it cannot be said that our former decision is the law of the case we are now considering, which, as a result of the trial of the issue of facts, presents a case radically different from that which was admitted by the demurrer, and before us, upon the former review when a hearing of the legal issue only was had. We have carefully examined the evidence, the findings and decree of the court, and the opinion which the district judge filed when the decision was given, with a view to ascertain whether the trial court followed our former decision.

The findings of fact in a narrow, but incomplete, sense, may give color to the contention of appellee, that it made the first appropriation of all the so-called winter waters for storage, and that it was upon this finding that the decree in its favor was made. But the evidence, the special findings, and the opinion of the trial court show that it was not upon this basis that the decree in its favor was rendered. It does appear from the evidence that appellee made an appropriation of some of the winter waters of the stream, before any appropriation was made by appellant; but it also clearly appears that in so diverting water, appellee always recognized, as it could only do, the priority belonging to the mill ditch of sixty cubic feet of water per second of time; and permitted enough water to flow by the headgate of its reservoir feeder and on down to the headgate of the mill ditch, which was further down the stream, to supply the full capacity of the mill race, to wit: sixty cubic feet of water per second of time, whenever the same was needed by the owner of that priority. It is true

appellee maintains that on Sundays, holidays, and at such other times as the milling company did not actually need its appropriation, the same was diverted by appellee; but the evidence is so indefinite as to this claim that no decree could be based upon it.    As a matter of fact, there never was any intention upon the part of appellee to acquire a priority as against the milling company; and notwithstanding its statement in argument now to the contrary, it is substantially true that until the time of the injury complained of in this action, the full quantity of water belonging to the mill ditch had always flowed, winter and summer, into and through the mill race, and after performing the function for which it was diverted, the water continuously flowed from the mill ditch again into the natural stream at a point above the headgate of appellant's ditch.    Such were the conditions at the time, and long before, appellant began its enterprise, and such they continued to be until sometime during the year 1898.    Then it was that appellee, defendant water company, entered into an agreement with the mill company, by the terms of which the latter agreed not to make use of its appropriation for a certain length of time, but temporarily to abandon the same, so that appellee might have the opportunity to divert into its reservoirs the water thus abandoned.    And it was during the period of time covered by this agreement, and as a result of the acts done thereunder, that as appellant alleges, and as the proofs show, it was deprived of some of the waters for its reservoir, to which it was entitled.    Upon the proposition now under consideration, the evidence in every important particular substantially corresponds with the allegations of the complaint, so that we emphatically declare that the case as made at the trial below on the issue of fact is essentially the same as that decided upon the issue of law raised by the demurrer to the complaint.

We apprehend, as stated in our former opinion, that the real controversy is as to whether or not it is in the power of the milling company, by a temporary or permanent abandonment of its priority, to deprive appellant of its appropriation,

by conferring, or attempting to confer upon appellee the right as against appellant to divert the mill priority at the headgate of appellee's feeder. To determine this question is the avowed object of this action ; and, in language too plain to be misunderstood, we said in our former opinion, that such authority could not be given.

It appears from the record that counsel for appellant asked the trial court to declare, as a matter of law, that the milling company could not, by contract, or otherwise, relinquish or change its appropriation made for the mill race, as against the rights of appellant company, from and after the time it made its appropriation for reservoir purposes below the mouth of the tail race of the milling company ; and counsel further asked the court to declare, as a matter of law, that in case the milling company should voluntarily abandon its right to use and flume the water to its mill race, the appellant company is entitled to it, notwithstanding such abandonment ; and that if permanently abandoned, while the milling company might not be compelled to run the water through the mill race, nevertheless that the water should flow down the natural channel of the stream to the headgate of the feeder ditch of appellant company, without interference by appellee. In reply to this request, the district court used this language :

" That is the whole case, that is your view of the opinion of the supreme court. I do not take that view of it at all. In my opinion the waters of the mill race appropriation when returned to the river, by reason of the non-user on the part of the mill company, in whole or in part, may be diverted by claimants senior to the plaintiff company, in the order of the seniority. Under the facts in this case defendant storage company is entitled to divert such waters for storage purposes in its reservoirs to the extent of their decreed capacity prior in time to plaintiff company. The request will be denied."

From this it is evident that the trial court misconceived our former decision, in which we expressly declared that in case of abandoment of the milling priority, the water thus returned to the stream does not belong to senior appropriators, the head-

gates of whose ditches are situate on the stream above the point of discharge of water from the mill race into the river, but that the same belongs to appropriators from the stream below such point of discharge, in the order of their priority. The remarks of the district judge conclusively demonstrate that the findings and decree were in favor of appellee, because it was his understanding of the law that if the milling company abandoned its priority of right to the use of water for milling purposes, it belonged to appellee, not because the latter ever made any valid appropriation of it, but that when abandoned, such amount of water was to be distributed among the appropriators from the entire stream in the order of their seniority, irrespective of the place of diversion.  In this he was clearly in error, and proceeded contrary to the doctrine already established in this case.   The evidence abundantly shows—and there is no finding by the trial court to the contrary, in fact, its finding is entirely consistent with this conclusion—that as between appellant and appellee, the former was the first appropriator, for the purposes of storing in a reservoir, of the waters of the river to the extent of the priority of the mill race appropriation, namely, sixty cubic feet of water per second of time, after it was returned to the stream ; and that although appellee made an appropriation from the river for storing in its reservoirs so-called winter water before any appropriation had been made by appellant, nevertheless, in doing so, it distinctly and clearly recognized the mill priority ; and that while such conditions were existing, the appellant made its appropriation ; and so, as to the mill ditch priority, after the water belonging to the same is returned to the stream at the mouth of the mill race, or if it is abandoned by its owner, the appellant, having first acquired a vested right thereto by virtue of its appropriation, is, as against appellee, the first appropriator thereof.

The point that appellant is not entitled to relief, unless it has sustained substantial damage, is not tenable.   Certainly the admitted interference by appellee with appellant's senior right to sixty cubic feet of water, and the avowed determina-

tion of the former to take the mill ditch appropriation whenever it is not used for the purpose of running the mill, entitles appellant at least to nominal damages ; and the action will not fail because appellant has suffered no damage. But the object of this action is rather that of a bill of peace or *quia timet*, and the facts entitle appellant to maintain the suit. The decree of the district court should be reversed, and the cause remanded, with instructions to the district court to enter a decree as asked by plaintiff, enjoining defendant from interfering with the flow of the so-called winter waters of the Cache La Poudre river, and the flow thereof at such other times as it is not needed for immediate use in irrigation, to the extent of sixty cubic feet of water per second of time, until plaintiff's reservoir is filled ; and also requiring the water officials to recognize the priority of plaintiff to that extent outside of the so-called irrigating seasons; and when the same is not wanted for the immediate use of irrigation, as senior to any of the reservoir storage priorities of defendant.

*Reversed and remanded.*