No. 14,134.

SLIDE MINES, INC. *v.* LEFT HAND DITCH COMPANY ET AL.
(77 P. [2d] 125)

Decided February 21, 1938.

70

Mr. J. F. Little, for plaintiff in error.

Mr. Harry C. Davis, Mr. Stanley T. Wallbank, Mr. Edward Z. Klahr, for defendants in error.

*In Department.*

Mr. Justice Knous delivered the opinion of the court.

At the suit of defendants in error, as appropriators for irrigation and domestic purposes of certain waters of Left Hand Creek, a natural stream, plaintiff in error was permanently enjoined from polluting the waters of said stream with mill tailings and slimes developed in

its milling operations. We shall refer to plaintiff in error as the mining company and to defendants in error as the farmers.

Numerous errors have been assigned, but the substantial contentions of the mining company briefly stated are: First, that the evidence failed to prove that it was polluting the stream with its mill tailings; second, that there was no threatened or apparent danger of future pollution of Left Hand Creek by the mining company's mill tailings and, therefore, nothing to enjoin; third, that the farmers have contributed to the pollution of Left Hand Creek by reason of which in equity they are precluded from objecting to pollution of the stream by the mining company; and, fourth, that the court should have permitted the filing of a supplemental answer tendered after final judgment and, on the basis thereof, vacated the injunction decree.

The proof disclosed, and the court found, that the mining company, by locating its mill at a distance from the stream, and by the installation of dams and by other construction, in good faith and at considerable expense, had attempted to impound its mill tailings and thus avoid pollution of the stream. However, there developed a sharp conflict in the evidence as to whether the mining company, despite these commendable precautionary measures, had polluted the stream as alleged. On this conflicting evidence the trial court determined that at the time the suit was brought and since, the mining company had in fact polluted the stream to the extent that there was impairment of the use of the water which the farmers were entitled to make, with attendant injury, within the prohibition of the definition given in the controlling case of *Wilmore v. Chain O'Mines*, 96 Colo. 319, 44 P. (2d) 1024, and as forbidden by section 186, chapter 110, C. S. A. '35. Under this state of the record, as we have consistently and many times held, we will not disturb the findings of the trial court.

As part of its original plan to impound its mill

tailings the mining company contemplated the installation of what is known as a Dorr Thickener, a machine designed to precipitate tailings from the water used in the milling operations. At the time suit was started and during the period of alleged pollution of the stream, such a machine had not been acquired, but before the trial of the cause one had been put into service whereby the mining company asserts that no further pollution can result from its milling operations, and on this theory it contends that the injunction should not have been granted.

Whatever may develop in the future properly must then be considered, but it is certain that where actionable pollution is found to exist at the time suit is filed and thereafter continued, an injunction properly cannot be denied because of arrangements which promise no future transgression but do not so insure. If the installation of the Dorr Thickener has the effect of preventing further pollution, as we trust will be the case, of course the mining company will in no manner be prejudiced by the injunction since, if no future pollution takes place, no further action can result.

Concerning a similar situation it was stated in *Piano & Organ Workers' International Union v. Piano & Organ Supply Co.*, 124 Ill. App. 353, 360: "And it may well be said in this case, that as we think the injunction forbade nothing but actions, in themselves unlawful, there can certainly be no practical harm in its continuance against any persons who are not now engaged in such unlawful actions and do not intend to be so in the future."

In one of the earliest cases, *Sherer v. Hodgson*, 3 Rawle (Pa.) 211, it is said: "If that were so, the author of a nuisance might foil the injured party forever by removing the cause of offence pending the assise, and replacing it as soon as he had abated the writ and soused the plaintiff in costs."

In this connection we believe it also obvious, under the doctrine announced in *Wilmore v. Chain O'-*

*Mines, supra,* relative to the pollution of streams by mill tailings, that the employment by mining companies of devices designed to impound or precipitate their tailings and thereby prevent the pollution of a stream, is not effective as a defense in a case of this character where the evidence establishes that notwithstanding such facilities there is in fact a pollution of the stream within the definition pronounced in the Wilmore case. In other words, if the system devised by the mining company to prevent the pollution of the stream by its mill tailings is not effectual in preventing such defined pollution in fact, the pollution may be enjoined.

 As a basis for its contention that the farmers did not come into court with clean hands, the mining company introduced evidence to the effect that the farmers in their ordinary irrigating operations by discharging large heads of water from what is designated as the Gold Hill Reservoir, which is a part of their irrigation system, into the channel of Left Hand Creek and other natural streams, caused the waters thereof to become discolored and to wash down the stream into their laterals a large amount of natural detritus, rock particles, decayed vegetable matter and other deleterious substances, exceeding in bulk the tailing deposits discharged from the mill, thereby, it is said, polluting the streams and contributing to the damaging of their fields.

The farmers' evidence was to the effect that such solid material as was carried into their laterals in the Gold Hill Reservoir operations was beneficial to their land and agricultural production and did not, in fact, constitute a pollution of the stream and the court so found.

In support of its position the mining company cites a number of cases in which an injunction was denied a complainant who, himself, was guilty of the same wrongful acts against which his suit was directed. Under the record in the case at bar these authorities have no bearing. In the Wilmore case, supra, in the majority opinion on rehearing, the word "pollution" is defined as

74

meaning "an impairment, with attendant injury, to the use of the water that plaintiffs are entitled to make. Unless the introduction of extraneous matter so unfavorably affects such use, the condition created is short of pollution." Here the trial court factually determined that such extraneous matter as the farmers introduced into the stream, not only did not unfavorably affect the use of the water they were entitled to make but was beneficial to it, and hence caused no pollution in a legal sense. The farmers having been adjudged guiltless, no basis is presented for the application of the principle advanced by the mining company.

Sometime after the final injunction decree had been entered the mining company asked leave to file a supplemental answer alleging that the farmers in the interim had discharged large heads of water from the Gold Hill Reservoir thereby polluting the stream in the manner previously alleged and causing great damage to certain roads belonging to the county of Boulder and to the property of several other mining companies, by reason of washing and flooding, wherefore the party mining company prayed that the injunction be vacated and the proceedings opened to permit it to show these facts in support of its contention, last discussed, that the farmers did not come into court with clean hands. The trial court refused to permit the filing of this supplemental answer or to vacate the judgment. This ruling was within its discretion. While the farmers' operations properly could be subjects for independent suits on behalf of any parties who considered themselves injured thereby, they were not grounds for dissolving the existing injunction.

The judgment is, therefore, affirmed.

MR. CHIEF JUSTICE BURKE, MR. JUSTICE BOUCK and MR. JUSTICE YOUNG concur.