## No. 17,235.

LEONARD ET AL. *v.* BUERGER.

(276 P. [2d] 986)

Decided November 29, 1954.

Mr. JOHN P. THOMPSON, for plaintiffs in error.

Messrs. BARNARD & BARNARD, for defendant in error.

*En Banc.*

MR. JUSTICE CLARK delivered the opinion of the Court.

BUERGER, as plaintiff, instituted injunction proceedings alleging interference with his irrigation ditch by defendant, F. J. Leonard, or some person under his direction, and for consequent damages. Upon it later appearing that the property traversed by the ditch was owned jointly by Leonard and his wife, she also was made a party defendant. Judgment of the trial court was in plaintiff's favor.

Plaintiff and defendants are the owners of separate tracts of land located in the upper valley of the Williams Fork of the Colorado River. The lands owned by defendants lie southerly from those of plaintiff and abut on plaintiff's property for a distance of somewhat less than a quarter of a mile. Lying westerly from the forty-acre tract of defendants which is adjacent to the lands of plaintiff, and also abutting on plaintiff's premises, is a forty-acre tract of United States national forest land. Traversing defendants' premises and flowing in a generally northerly or northeasterly direction is a small creek, a tributary to the Williams Fork, the name of which appears variously in the several documents included within the file of this case, as "Reid," "Reed," "Read" Creek. Not knowing which is correct, we shall refer to it as Reid Creek. Reference is made to the ditch in controversy as the Glenmar Ditch. It diverts water from Reid Creek on lands now owned by defendants and traverses their property for a distance of approximately 700 feet onto the forest tract above mentioned, thence to plaintiff's lands. Defendants acquired title to their lands by purchase in 1950, intending to use same for hay raising and commercial recreation. At the time of its purchase, evidently the ranch was considerably run down and Reid Creek was nothing but a series of beaver dams. In 1951 defendants caused the pools made by said beaver dams to be drained and the land formerly covered thereby to be leveled so that grass seed might be

sown thereon for the purpose of raising hay. To effect the thorough drainage of this field, defendants caused the channel of said creek to be diverted into a ditch they constructed around the outer edge of said area. In the process of this improvement the Glenmar ditch also was leveled and its point of diversion obliterated. As a result of defendants' activity in this connection and their refusal to permit reestablishment of the Glenmar ditch, this action was instituted.

Admitting that no consideration had been paid and no deed had been executed conveying a right of way for the Glenmar Ditch, plaintiff relies upon the doctrine that a ditch constructed by a party over lands of another by consent of the owner, or without objection on his part, and used as the means for the carriage of water for irrigation purposes over a period of years, has a right of way which may not be destroyed by the owner of the lands over which it crosses.

Defendants allege as grounds for reversal: (1) That the trial court erred in awarding plaintiff an easement across defendants' land, since none such appears by grant of record, and that even if there had at one time been such a right of way, it had been abandoned; that the ditch was not apparent at the time defendants purchased their property, had no headgate, and did not continue to plaintiff's land; (2) that the trial court erred in awarding damages to plaintiff for the cost of construction of a new headgate; and (3) in awarding damages to plaintiff on account of shortage in his 1952 hay crop due to lack of water.

Incidently, plaintiff likewise complains and assigns as cross errors that the trial court, while correct in awarding damages for shortages in defendants' 1952 hay crop, committed error in awarding an insufficient amount, and likewise in refusing to award additional damages on account of loss of pasturage.

Some few days after the conclusion of the final hearing, the trial judge prepared and filed his "Opinion and

Memorandum of Decision" in which he carefully set forth at length his findings upon every issue of fact involved in that proceeding and likewise the conclusions of law considered by him applicable thereto. From ample evidence contained within the record the trial court found that the irrigation ditch now known as the Glenmar ditch was first constructed about fifty years ago for irrigation of lands near the vicinity of its point of diversion from Reid Creek; that in 1915 one Baldwin acquired the lands now owned by defendants and also occupied as a homestead a portion of the lands now belonging to plaintiff and thereupon extended said ditch so as to cover lands on his homestead; that in 1922 one Markle acquired lands adjacent to the Baldwin homestead, now likewise owned by plaintiff, and further extended said ditch so as to cover a portion of said lands; that from 1915 until 1952 waters diverted from Reid Creek through said ditch were never used on any part of the lands now owned by defendants; that on the Markle and Baldwin homesteads now owned by plaintiff, the waters carried by said ditch "have been continuously used since at least 1922 for the irrigation of both."

The trial court further found that in 1922 and prior thereto, the waters carried by said ditch were diverted directly from the flowing channel of Reid Creek by means of a constructed headgate therein, which later became submerged and rendered ineffective because of a series of beaver dams erected in that area, and that thereafter the supply of water for said ditch was taken from some one or more of the pools formed by said beaver dams. It is not certain, said the trial court, whether a structural headgate was maintained in any of said beaver dams or whether the water supplying said ditch was released therefrom by other means. Following the ditch on down from its source, the trial court further found that at one time it had been constructed throughout its length onto lands now belonging to plaintiff, but later, at a point within the forest tract, the water car-

ried by it had been permitted to flow down a depression to plaintiff's land, where it was caught and applied to irrigation of the fields by pickup ditches.

The trial court then related the facts concerning the activities of defendants when they acquired title to their present lands as hereinabove stated. A temporary injunction having been granted prior to final hearing, plaintiff proceeded thereunder to clean out his ditch to the place where it intersected the by-pass canal constructed by defendants and there he inserted a diversion headgate. The trial court held that the defendants were without lawful authority to destroy said Glenmar Ditch and its point of diversion regardless of how that diversion had been accomplished; and that, since it was impossible and possibly improper to undertake or require a restoration of conditions as they existed prior to the time when defendants drained and leveled said beaver dams, plaintiff's rights might be protected only by permitting the installation of a headgate in the channel constructed by defendants to carry the waters of said creek, the cost thereof to be borne by defendants. On other points raised by defendants, the trial court treated each specifically and entered findings adverse to defendants' contentions.

With respect to damages, the trial court allowed plaintiff $495.90 because of shortage in his hay crop in 1952 due to defendants' interference with his water supply through the Glenmar ditch, and $138.22 as the cost to plaintiff for the placement of a proper headgate to which reference has hereinabove been made.

Defendants contend that all the evidence adduced in this case on behalf of plaintiff shows that said water right was instituted by their predecessor in title, Reid; that the ditch as extended by Baldwin went only to lands then owned by him and that at no time was said ditch used by any person other than the owner of the land served thereby. In this contention defendants are in error, as the trial court found, because it is very clear

from the record, that following the ownership of said Baldwin, predecessor of title not only of defendants but likewise to part of the lands now owned by plaintiff, said tracts became separated in ownership, and thereafter water continued to be supplied to the Baldwin homestead, now owned by plaintiff, without objection or interference by the then owners of the lands now owned by defendants. Furthermore, there was no connection whatsoever between defendants' predecessors in title and Markle. Stripped of all its trimmings and ornamentation, the claim of defendants actually is that, there is in existence no right of way for the Glenmar ditch because there is shown of record no grant of any easement for its use, and the evidence is insufficient to show acquisition by adverse user. They discount the position taken by plaintiff that a grant by formal document for a ditch right of way is not required. They reply that, in law only such rights of way as are paid for and conveyed by formal document may be recognized. They rely upon a principle unrelated to any questions arising in this case, that private property may not be taken without due process of law and upon payment of just compensation. Were this an action for procurement of a right of way upon which to construct and operate a nonexistent ditch, defendants' contention would have merit, but this is not such a proceeding. It is one thing to state that the owner of land over which another contemplates construction of an irrigation ditch has the right to demand just compensation, and quite another to contend that he is required to do so. There is no law which forbids one to grant permission to his neighbor to dig an irrigation ditch across his land without first purchasing a right of way and getting a deed to it. When, under such circumstances, the ditch actually is excavated and put into use without objection, or by approval, the owner of land traversed thereby may not thereafter withdraw his consent, deny the right of maintenance or destroy the ditch. Such consent need not even be in writing. Where the

ditch has been in existence for any appreciable time, consent to its original construction is presumed.

The rules of law stated in the preceding paragraph are clearly devoid of novelty, since they have their roots in the territorial days of this jurisdiction in the venerable case of *Yunker v. Nichols,* 1 Colo. 551. The principles announced therein not only met approval in subsequent legislation, but they also became the basis of future case law in Colorado, and remain unchanged to this day. While the facts in the case at bar differ somewhat in detail from those in *Yunker v. Nichols, supra,* there is nothing to distinguish the applicable principles. This also is true with respect to the case of *Schilling v. Rominger,* 4 Colo. 100; *De Graffenried v. Savage,* 9 Colo. App. 131, 47 Pac. 902; *Graybill v. Corlett,* 60 Colo. 551, 154 Pac. 730; all of which decisions have been cited with approval many times. To only one of these citations do we call particular attention, that being *Rogers v. Lower Clear Creek Ditch Co.,* 63 Colo. 216, 218, 165 Pac. 248, wherein the court again specifically declared that, "Whatever may be the law in other jurisdictions, it is established in this state that where a ditch owner is permitted, without interference, to construct an irrigating ditch over the land of another, and the ditch it put in use, a right of way is thereby acquired, and the necessity for condemning, to obtain possession, is obviated. [citing cases]."

The trial court manifestly was right in declaring, under the applicable law, that the owner of the Glenmar Ditch had and has a right of way across the lands of defendants.

■ With respect to the questions concerning damages awarded, and not awarded, we have carefully examined the record and again find ourselves in agreement with the findings and conclusions of the trial court. The contention of defendants that it was unnecessary for plaintiff to construct a new headgate since they already had constructed one in the near vicinity which he might

have used, is without merit, since it was they who destroyed the former arrangement by which defendants took water into his Glenmar ditch, and there is no showing that the headgate that they sought to substitute is either adequate or is on the right of way of said ditch. With respect to damages for the loss of crops and pasture, this raises a rather difficult question, but we are convinced that the trial court had ample reason to award the damages to plaintiff that it did, and we are not inclined to criticize its judgment on the items it failed to award, in the face of its findings that the evidence in support thereof was uncertain and speculative. The presumption of regularity sufficiently supports the trial court's awards.

The judgment of the trial court therefore in all respects is affirmed.