No. 21782.

THE GAME AND FISH COMMISSION OF THE STATE OF COLORADO, ET AL *v.* THE FARMERS IRRIGATION COMPANY, A CORPORATION, ET AL.

(426 P.2d 562)

Decided April 3, 1967.    Rehearing denied May 1, 1967.

302

DUKE W. DUNBAR, Attorney General, DONALD H. HENDERSON, Assistant, NEIL S. MINCER, Special Assistant, ERVEN T. LARSON, Special Assistant for plaintiffs in error.

FRANK 'DELANEY, ROBERT C. CUTTER, for defendants in error.

*En Banc.*

MR. CHIEF JUSTICE MOORE delivered the opinion of the Court.

THIS action is before this court for the second time. In *The Farmers Irrigation Company v. The Game and Fish Commission of the State of Colorado*, 149 Colo. 318, 369 P.2d 557, it was held that the complaint stated a claim against the commission upon which relief could be granted, and the cause was remanded for further proceedings.

The complaint set forth eighty-one separate claims and contained seventy typewritten pages in which 130 plaintiffs sought damages allegedly resulting from the pollution of their water supply by the installation and operation of a fish hatchery on East Rifle Creek in Garfield county. The corporate plaintiff was the Farmers Irrigation Company and the individual plaintiffs were stockholders in that company who were also the owners

and operators of ranch or farm properties located on what is known as Silt Mesa near the town of Silt in Garfield county.

The answer filed by the defendants contained nine defenses to which we refer under broad captions as follows: (1) Failure to state a claim; (2) general denial of all material allegations; (3) no claim stated by plaintiffs who acquired their land subsequent to the building of the fish hatchery; (4) as to some of the plaintiffs, pollution of the water was caused by their own acts; (5) estoppel as to those plaintiffs who acquired their property subsequent to construction of the fish hatchery; (6) conduct of the defendants was pursuant to a lawful purpose of a state agency with no malice or negligence involved; (7) negligence on the part of plaintiffs in distributing the water to individual users; (8) laches, preventing equitable relief by injunction; and (9) any pollution of stream existed prior to installation of the fish hatchery and was not caused thereby.

The issues as thus framed were tried to the court sitting without a jury, and the trial consumed thirty-two days extending over a period of sixteen months. The trial concluded on February 24, 1964; briefs were filed with the trial court; and Judgment and Decree entered on October 21, 1964. Prior thereto, on September 30, 1964, the trial court filed its "Memorandum Opinion" containing its Findings of Fact and Conclusions of Law in favor of the plaintiffs. The decree enjoined the defendants from "polluting and contaminating the water discharged from said fish hatchery into East Rifle Creek," and from causing fluctuations in the stream flow in such manner as to interfere with the proper administration of adjudicated water rights on the stream.

The trial court entered extensive findings of fact, and preliminary thereto made the following statement:

"After full consideration of the voluminous evidence in this case, the Court finds that the plaintiffs have established by an overwhelming preponderance of the

evidence the material facts alleged in the complaint and are entitled to injunctive relief but to damages only to the extent hereinafter set forth."

Separate awards of damages in favor of claimants in sixty-one separate claims were ordered in amounts between the low of $264 and the high of $2250. The trial court further held that the claimants in eighteen other counts of the complaint,

"* * * either did not use or need the domestic supply of water claimed by them, or were not otherwise damaged, and are, therefore, not entitled to recover damages under the counts listed after their names, to-wit: (This does not preclude any of the plaintiffs from recovering under other counts.)"

Judgments were entered pursuant to the above findings and injunctive relief was granted to all the plaintiffs.

As grounds for reversal of the judgment, argument is presented under seven captions as follows:

"I. The entire evidence was insufficient, as a matter of law, to sustain the judgment and decree of the trial court.

"II. The operation of the Rifle Fish Hatchery has not polluted the water used by the plaintiffs and no unlawful acts have been committed by the defendants.

"III. The doctrine of reasonable use applies in this case and the defendants' use of the waters of East Rifle Creek is certainly a reasonable one.

"IV. The court applied an improper measure of damages and there is no competent evidence to support the damages awarded to the plaintiffs herein.

"V. Plaintiffs are not entitled to injunctive relief under the pleadings and evidence in this case.

"VI. The court erred in overruling defendants' motions to dismiss interposed at the close of plaintiffs' case.

"VII. The trial court erred in awarding costs against the defendant Game and Fish Commission."

■ A careful consideration of the entire record and

the authorities cited on both sides in connection with points I, II, III, VI and VII above quoted, leads to the unmistakable conclusion that the trial court committed no error in sustaining the position taken by the plaintiffs in the action. No good purpose would be served in lengthening this opinion by the numerous pages which might be required to set forth details and distinctions which compel the ultimate conclusion. It is sufficient to say that for the most part the trial court, on sufficient competent evidence, resolved in favor of the plaintiffs pertinent facts which were in dispute. The determination of the facts as found by the court called into play the legal principles which were correctly applied.

We now consider specifically points numbered IV and V, for a correct understanding of which it will be necessary to direct attention to facts applicable thereto. The individual plaintiffs are owners of eighty tracts of ranch or farm property served by the corporate defendant which owns what is known as the Harvey Gas Reservoir and the Harvey Gap Ditch, to which valuable water rights have been adjudicated.

Practically all of the farms under the system had cisterns constructed thereon which stored and furnished water for domestic uses to the residents or occupants of the improvements located thereon. These cisterns were filled with water directly from the Harvey Gap Ditch and the laterals and distribution ditches therefrom, and the normal procedure was that the plaintiff company would run two "cistern" runs a year for such purposes, one run being in the early spring, usually March, and the other run being in the late fall, usually November. Many users also filled their cisterns in between the regular cistern runs, either from direct flow water out of the ditch or from water stored in the Harvey Gap Reservoir.

During the summer of 1954, the Game and Fish Commission commenced construction of the Rifle Falls Fish Hatchery along the west bank of East Rifle Creek at a

point approximately one and one-half to two miles above the headgate of the Harvey Gap Ditch. The fish hatchery was completed and began operation on or about December 7, 1954, and has operated at this site continuously since that date. In the operation of the fish hatchery, the waters of East Rifle Creek are diverted through the hatchery where the water flows continuously through the retaining ponds and raceways of the hatchery and is thereafter returned to East Rifle Creek at a point approximately three-quarters of a mile below the point of diversion. The use of the water by the fish hatchery is nonconsumptive and the total quantity diverted is subsequently returned to the stream.

The attorney general on behalf of plaintiffs in error argues that the trial court erred in applying an improper measure of damages in that the court considered as relevant expenditures of money by various plaintiffs covering costs of hauling · water and digging wells in order to secure a new source of supply. The court stated:

"That inconvenience, discomfort and annoyance occasioned by the pollution of the domestic water supply of various of the plaintiffs is a factor to be taken into consideration by the Court. The Court should make a reasonable allowance on account of the foregoing elements of damage. See: *Van Brocklin v. Gudema,* 199 N.E. (2d) 457."

The trial court further found:

"That the defendants have not attempted to condemn the property rights of the plaintiffs or to convert this action into an inverse condemnation proceeding. The defendants simply contend that they have not contaminated or polluted the waters of East Rifle Creek above the head gate of said Grass Valley Canal, a contention which the Court finds is wholly without foundation."

This is an unusual situation in which an agency of the state has not "taken" any tangible property for a public service since all of the water used in the fish hatchery is returned to the stream. The court specifically found,

and there is an abundance of evidence to support the finding, that the water was returned to the stream in a contaminated and damaged condition as a direct result of which financial loss was suffered by the plaintiffs.

The attorney general argues that the proper measure of damage in the instant case is the difference in the value of plaintiffs' property immediately before and immediately after the injury caused by the conduct of plaintiffs in error. This rule is not one of inflexible application as is shown by the opinion of this court in *Big Five Mining Co. v. Left Hand Ditch Co.*, 73 Colo. 545, 216 Pac. 719, from which we quote the following:

"In *Langdon v. The Mayor*, 133 N.Y. 628, 31 N.E. 98, it was held that where a necessity existed for departing from the general rule as to the measure of damages, that rule would not be applied; and that the best evidence obtainable as to damages would be admissible. One claiming damage is, therefore, remitted to such evidence as will best enable the jury to determine what loss has been suffered, when the freehold or improvements have been damaged.

"While the authorities differ as to the rule for the ascertainment of damages, under varying circumstances, it is everywhere admitted that the rule to be applied should be such as will enable the jury to determine, as near as may be, the actual loss suffered."

In *Fort v. Brighton Ditch Company*, 79 Colo. 462, 246 Pac. 786, we said, *inter alia*: "The rule to be applied should be such as will enable the jury to determine, as near as may be, the actual loss suffered." See also *Kenyon v. Bauman*, 117 Colo. 150, 184 P.2d 502.

In *Farmers Irrigation Company v. The Game and Fish Commission, supra*, we held that:

"A priority to the use of water for irrigation or domestic purposes is a property right and as such is fully protected by the constitutional guaranties relating to property in general."

Article II, Section 15, of the Colorado Constitution

provides in pertinent part that, "Private property shall not be taken *or damaged* for public or private use, without just compensation." (Emphasis added.) This provision is not limited in its application to condemnation proceedings. It prohibits not only the taking of property but also the *damaging* thereof, and whosoever damages the property of another, whether he be an individual or an agency of the state, must be held responsible in damages for the loss caused thereby. The State of Colorado has "damaged" the property rights of numerous persons, and those who have thus been "damaged" contrary to the guarantees of the constitution, are entitled to be compensated for the loss sustained. That loss necessarily includes out-of-pocket expenses incurred by those suffering the damage in an effort to avoid the consequences of the defendants' acts resulting in the loss.

The plaintiffs in this action cannot be limited in their claims for "damage" to property by the measure of damages usually applied in actions in condemnation of private property for a public purpose. This is not a condemnation action. We are not advised of any powers existing in the Game and Fish Commission which would authorize the taking or damaging of the water rights of the plaintiff, even if such condemnation proceedings had been undertaken by the commission. See *Mack v. Town of Craig,* 68 Colo. 337, 191 Pac. 101. In *Healy v. City of Delta,* 59 Colo. 124, 147 Pac. 662, it was held that:

"Not only must the authority to municipal corporations, or other legislative agents, to take private property, be expressly conferred, and the use for which it is taken specified, but the power, with all constitutional and statutory limitations and directions for its exercise, must be strictly pursued."

In *Potashnik v. Public Service Co.* 126 Colo. 98, 247 P.2d 137, the following pertinent language appears:

"Whatever may have been the ancient right of condemnation, it has been restrained by constitutional limitations in the protection of individual property rights.

The power lies dormant in the state until the legislature speaks. 5 Thompson on Real Property (Permanent Ed.), section 2578, page 327. The right to condemn private property is therefore a creature of statute, pursuant to which it must clearly appear either by express grant or by necessary implication. *Mack v. Town of Craig,* 68 Colo. 337, 191 Pac. 101. For general discussion, see 5 Thompson on Real Property (Permanent Ed.), sections 2578, 2579, 2580, page 327 et seq."

To like effect is *Beth Medrosh Hagodol v. City of Aurora,* 126 Colo. 267, 248 P.2d 732, and *City and County of Denver v. District Court,* 140 Colo. 1, 342 P.2d 648.

■■ Where there is no power on the part of a state agency to condemn private property for a claimed public use, a property owner whose property has been damaged by such agency cannot be held to have commenced an action for "inverse condemnation" when he seeks to recover the damages actually sustained by him. There can be no "inverse condemnation" in a situation where no right exists in a governmental agency to proceed under eminent domain. The plaintiffs, in demanding relief in the form of damages covering the loss sustained by them, are not forced to accept the measure of damages usually applicable to a condemnation case.

The due process clauses of the Constitutions of Colorado and of the United States afford protection to plaintiffs. In *Rosane v. Senger,* 112 Colo. 363, 149 P.2d 372, it was said that: "A legal right to damage for an injury is property and one cannot be deprived of his property without due process." Article II, Section 6, of the Constitution of Colorado, affords additional protection to the plaintiffs. It provides that:

"Courts of justice shall be open to every person, and a speedy remedy afforded for every injury to person, property or character; and right and justice should be administered without sale, denial or delay."

■ With regard to the contention that the plaintiffs are not entitled to injunctive relief, it is sufficient to say

that such relief is an appropriate remedy to prevent pollution and contamination of a stream to the injury of appropriators of water from that stream. The *Cache La Poudre Reservoir Co. v. The Water Supply and Storage Co.* 27 Colo. 532, 62 Pac. 420; *Slide Mines, Inc. v. Left Hand Ditch Company,* 102 Colo. 69, 77 P.2d 125; *Beart v. City of Arvada,* 159 Colo. 489, 412 P.2d 902.

The judgments are affirmed.