601 P.2d 1082 (1979)
Grace SRB, Individually and as administratrix or personal representative of the Estate of Hugo F. Srb, Plaintiff-Appellant,
v.
BOARD OF COUNTY COMMISSIONERS, COUNTY OF LARIMER, and Richard D. Lamm, Governor of the State of Colorado, State of Colorado and State of Colorado Department of Health, Defendants-Appellees.
No. 78-1131.
Colorado Court of Appeals, Div. I.
July 5, 1979.
Rehearing Denied August 2, 1979.
Certiorari Granted October 9, 1979.
*1083 Fischer & Wilmarth, Elery Wilmarth, Allen R. Schwartz, Fort Collins, for plaintiff-appellant.
Harden, Napheys, Schmidt & Hass, George Hass, Fort Collins, for defendant-appellee Board of County Commissioners.
J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., Vicki J. Fowler, Asst. Atty. Gen., Denver, for defendants-appellees Richard D. Lamm, State of Colorado and State of Colorado Department of Health.
VAN CISE, Judge.
Plaintiff, Grace Srb, appeals from the order of the trial court granting the summary judgment motions of the defendants, Larimer County Board of County Commissioners, Richard D. Lamm, State of Colorado, and Colorado Department of Health. We reverse.
On July 31 and August 1, 1976, a disastrous flood ravaged the Big Thompson Canyon, west of Loveland, Colorado. Defendant owned certain real property located in the Big Thompson Canyon. Upon that property stood a residence and, within the residence, substantial personal property.
On August 5, 1976, the Governor issued an executive order under the authority of the Colorado Disaster Emergency Act of 1973, § 28-2-101, et seq., C.R.S.1973, which authorized the Larimer County Board of County Commissioners to remove such property and debris in the canyon as was designated by the State Department of Health inspectors to be an immediate hazard to public safety or welfare or which impaired necessary access. Plaintiff alleged in her complaint that the county destroyed and removed her residence and personal property pursuant to that executive order. That occurred about August 23, 1976.
Section 28-2-111(4), C.R.S.1973, formerly provided:
"Any person claiming compensation for the use, damage, loss, or destruction of property under this [Act] shall file a claim therefor with the Colorado claims commission in the form and manner the commission provides under part 7 of article 30 of title 24, C.R.S.1973."
Part 7 of Article 30, title 24, establishing the Colorado claims commission and the procedures by which it was to handle claims, was repealed effective January 1, 1978, 1977 Colo.Sess.Laws, § 24-30-711 at 1176, and thus the claims commission was abolished. Plaintiff therefore gave "Notice of claim of damages pursuant to C.R.S.1973, 24-10-109," to the State and the County, contending that her property had been destroyed without prior notice, that the property *1084 did not endanger the public health or welfare, and that it was in a repairable condition.
Plaintiff then filed the instant action in the district court. After alleging the facts substantially as set out above, she requested that judgment be entered against the defendants for the value of the residence and personal property. Motions of all defendants for summary judgment were granted, and plaintiff appeals.

I.
Plaintiff contends that by enacting § 28-2-111, C.R.S.1973, the General Assembly expressed its intent to compensate those whose property was destroyed by the government in coping with a disaster emergency; that abolition of the claims commission, to whom compensation claims were to be presented, did not abolish the right to make a claim; that in order to give effect to § 28-2-111, there must be a forum in which to assert the claim; and that that forum is the district court. See Colo.Const., Art. VI, § 9.
By § 28-2-111, C.R.S.1973, the General Assembly created a right to compensation in persons whose property was taken or used without compensation during a disaster emergency. Section 28-2-111(4), C.R.S. 1973, which was repealed along with the abolition of the Colorado claims commission, created a correlative remedy for the right, i. e., the filing of a claim with the claims commission.
Prior to its abolition, it was the function of the claims commission to receive petitions for claims against the state filed within 2 years of the accrual of the claim, to investigate and hold hearings on such claims, and to recommend a disposition of the claims to the General Assembly. Sections 24-30-705 through 708, C.R.S.1973. It is clear, however, that the claims act was not a waiver of sovereign immunity, but merely established "an orderly and expeditious procedure to aid the General Assembly in the consideration and evaluation of those tort claims against the state wherein the doctrine of sovereign immunity has not been waived . . . ." (emphasis added) Section 24-30-701, C.R.S.1973.
Thus, we disagree with plaintiff's contention that the only way to give effect to § 28-2-111, C.R.S.1973, is to hold that it creates a right of action which may be enforced in the district court. Rather, we view § 28-2-111 as merely declarative of the already existing right of a citizen to present his claim against the state to the General Assembly by way of special or private bill. See Colo.Const., Art. V, § 25. The statute did not create any new right or cause of action, nor did the abolition of the portion pertaining to the claims commission eliminate any right against the state for damage to property suffered during a disaster emergency.

II.
Plaintiff next contends that to interpret the disaster emergency act, as we have done above, deprives her of due process of law relative to the destruction of her property by the state without just compensation. We disagree.
No person may be deprived of his property without due process. Colo.Const., Art. II, § 25. Under this provision, our Supreme Court has long held that a person may not be deprived of his property by the state without notice and hearing. See, e. g., Smith Bros. Cleaners & Dyers, Inc. v. People ex rel. Rogers, 108 Colo. 449, 119 P.2d 623 (1941). Ordinarily, notice and hearing must be given before the property is taken. See, e. g., Brown v. City of Denver, 7 Colo. 305, 3 P. 455 (1884). However, when an emergency situation exists and it is necessary for the protection of the public health, safety, or welfare for the state to take immediate action, due process is satisfied if the property owner is given the opportunity to challenge the act of the state after the taking. See Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) 7 E. McQuillian, Municipal Corporations § 24.561 at p. 595 (3rd ed.).
Here, plaintiff is entitled to a hearing at which she may have the opportunity *1085 to present evidence to support her allegation that it was unnecessary, in coping with the Big Thompson emergency, for the government to destroy her property. See McMahon v. City of Telluride, 79 Colo. 281, 144 P. 1017 (1926). This is an unresolved issue of fact, and therefore, the trial court erred in entering summary judgment for defendants. McMahon, supra.

III.
Relative to plaintiff's claim for compensation, the Governor, State, and the Department of Health contend that they cannot be liable to a property owner for summary destruction of property under any circumstances. We disagree.
Private property may not be taken or damaged for public or private use without just compensation. Colo.Const., Art. II, § 15. The purpose of this provision of the Constitution is to provide a remedy in damages for injury to property, not common to the public, inflicted by the state or one of its political subdivisions. See Board of County Commissioners v. Adler, 69 Colo. 290, 194 P. 521 (1920). And, this section is not limited in application to condemnation proceedings. Game & Fish Commission v. Farmers Irrigation Co., 162 Colo. 301, 426 P.2d 562 (1967); Board of County Commissioners v. Adler, supra. Rather, the section is remedial in nature and must be liberally construed. See City of Pueblo v. Strait, 20 Colo. 13, 36 P. 789 (1894).
In this case the plaintiff's property was "taken" because her residence and personal property were destroyed. See Harrison v. Denver City Tramway Co., 54 Colo. 593, 131 P. 409 (1913). And this constitutes a taking even though the land itself was not appropriated. See Denver Circle R. R. v. Nester, 10 Colo. 403, 15 P. 714 (1887); Mollandin v. Union Pacific Ry., 14 F. 394 (D.Colo.1882).
However, when property is taken by the state or one of its political subdivisions under circumstances of imminent necessity, the failure justly to compensate the owner does not violate Art. II, § 15. See McMahon v. City of Telluride, supra; Jenks v. Stump, 41 Colo. 281, 93 P. 17 (1907). See also United States v. Caltex, Inc., 344 U.S. 149, 73 S.Ct. 200, 97 L.Ed. 157 (1952); Miller v. Schoene, 276 U.S. 272, 48 S.Ct. 246, 72 L.Ed. 568 (1928); 6 E. McQuillian, Municipal Corporations § 24.23 (3rd ed.); Annot. 14 A.L.R.2d 73.
Nevertheless, summary judgment was here improper because plaintiff alleged in her pleading and in her affidavit that no imminent necessity existed. This is a disputed issue of fact, and entry of summary judgment was therefore improper. See Jenks v. Stump, supra.

IV.
Finally, all defendants contend that even if their destruction of plaintiff's property was not done under circumstances of imminent necessity or to protect the public health, safety or welfare, that they are immune from suit by virtue of the Colorado Governmental Immunity Act, § 24-10-101, et seq., C.R.S.1973. We disagree.
The General Assembly's restoration of governmental immunity in certain situations following its abrogation by the Supreme Court in Evans v. Board of County Commissioners, 174 Colo. 97, 482 P.2d 968 (1971), and companion cases, could not change the rule that the just compensation clause of our Constitution creates an exception to the doctrine of governmental immunity. See Board of County Commissioners v. Adler, supra.
The judgment is reversed, and the cause is remanded for further proceedings.
SILVERSTEIN and COYTE, JJ., concur.