George STOLL, Mary Stoll, Marvin Etchison, Lucille Hill Etchison and Walter Rath, Plaintiffs-Appellants,

v.

MacPHERSON DUCK CLUB, LTD., a Colorado corporation, Claude E. Kinnaman, Conrad E. Kinnaman, and Helen Kinnaman, Defendants-Appellees.

No. 78–621.

Colorado Court of Appeals, Division III.

Dec. 6, 1979.

Rehearing Denied Dec. 28, 1979.

Certiorari Denied March 3, 1980.

Holland & Hart, John U. Carlson, Bonnie Starr Mandell, Charles M. Elliott, Denver, for plaintiffs-appellants.

Steinmark & Lawrence, Alvin L. Steinmark, Kim R. Lawrence, Greeley, for defendants-appellees.

VAN CISE, Judge.

Plaintiffs brought this action to quiet their title to, and to confirm their rights in, the Putnam Drainage Ditch, particularly that portion flowing through property owned by defendant MacPherson Duck Club, Ltd. (the Club), and their correlative rights of entry for maintenance of the ditch. They also sought to enjoin defendants from interfering with the flow of drainage water in the ditch, from obstructing the ditch or altering its historic course and grade, and from interfering with plaintiffs' rights to maintain the ditch within a strip of land extending 30 feet on each side of the centerline. After trial to the court, the complaint was dismissed. Plaintiffs appeal. We reverse.

The facts are essentially undisputed. Plaintiffs Stoll and Etchison own lands which lie above the land owned by the defendant Club. Plaintiff Rath and defendants Kinnaman own lands below the Club's land. In 1907, the predecessor in title to the land of all of the parties constructed the Putnam Drainage Ditch across all of the properties for the purpose of draining excess water from these lands into the South Platte River. This ditch has been in continuous use for that purpose since its construction. The unrestricted drainage of water through the ditch permits utilization of plaintiffs' lands for pasture and hay meadow, which would be impossible without such drainage.

In 1971, the Club obtained from the water court having jurisdiction in this area a conditional decree confirming its water rights in and to the water and seepages arising from springs which naturally collect and flow in that part of the ditch located on the Club land. This water was to be impounded behind a series of small dams along the ditch and at or near the sites of the various springs, thereby raising the water level of the ditch from a minimum of eight inches to a maximum of two feet in height. The ponds or pools so created were to be used for the commercial raising of fish. In March 1975, this conditional decree was confirmed by the water court after a hearing on modifications requested by plaintiffs Stoll and Etchison which they felt necessary to protect their land. The water court at that hearing declined to consider or rule upon any claim by these plaintiffs for damage or potential damage expected to arise from the Club's implementation of its conditional water rights.

In July 1975, this action was commenced. At the trial in 1978, in addition to the facts set forth above, the evidence was that maintenance work on the portion of the ditch located on the Stoll and Etchison lands have been performed twice since 1918. No maintenance had ever been performed on that part of the ditch located on the Club land, and plaintiffs had never entered upon the Club land for the purpose of maintaining the ditch. There was testimony, however, that in the near future maintenance work would be necessary on plaintiffs' and on the Club's portions of the ditch. This work would consist of going in the ditch with a drag line to remove weeds and vegetation in order to retain the normal cross-section of the ditch and its normal grade or slope.

The Club president testified that, although the Club originally considered placing dams along the ditch, no dams have been constructed and there is no present plan to place any dam or other obstruction in the main channel of the ditch at any time. Plaintiffs' engineering expert testified, and the Club's expert generally agreed, that if the Club reverted to its original plan and placed dams in the ditch, such obstruction of the ditch would cause a back water effect and decrease the velocity of the water flowing in it. The decrease in water velocity would result in the settling of silt or debris normally carried out by the water and the depositing of sediment at the bottom of the ditch. This would raise the grade of the ditch, thereby decreasing its hydraulic capacity and causing it to overflow. The more dams, the greater the sedimentation problem. Also, placement of dams in the ditch would increase the need for maintenance.

The court held that there was "no conclusive evidence that the placement of dams or obstructions in the ditch on [the Club] land would adversely affect plaintiffs' land in any manner." In dismissing the action, the court concluded: (1) that plaintiffs have no right, title, or interest in and to the ditch that would give them the right to enter upon the land of the Club for the purpose of maintaining that portion of the ditch; (2) that plaintiffs have sustained no damage as a result of any action of the Club with reference to the ditch; and (3) that there was no evidence that they will be so damaged in the future.

I.

Plaintiffs contend that there is no basis in the record for the court's conclusion that

plaintiffs Stoll and Etchison, the owners of the upper estate, have no right, title or interest in the ditch that would give them the right to enter upon the Club's property for the purpose of maintaining the portion of the ditch running through that property. We agree with plaintiffs.

Where, as here, a drainage ditch follows the natural drainage or has been in existence and used for an appreciable length of time (here, 70 years), the persons using the ditch have a legal and natural easement over the lands of the lower landowners for drainage of surface water, *Ambrosio v. Perl-Mack Construction Co.*, 143 Colo. 49, 351 P.2d 803 (1960); *Leonard v. Buerger*, 130 Colo. 497, 276 P.2d 986 (1954); *Boulder v. Boulder & White Rock Ditch Co.*, 73 Colo. 426, 216 P. 553 (1923); *Calvaresi v. Brannan Sand & Gravel Co.*, 35 Colo.App. 271, 534 P.2d 652 (1975), and have a property right in the ditch, *Leonard, supra*, together with the right to maintain it and to enter upon the servient estate for such purpose, with space therefor as exigency may show. *Hankins v. Borland*, 163 Colo. 575, 431 P.2d 1007 (1967); *Leonard, supra; Neville v. Louden Irrigating Canal & Reservoir Co.*, 78 Colo. 548, 242 P. 1002 (1926); *Knudson v. Frost*, 56 Colo. 530, 139 P. 533 (1914); *Calveresi, supra; Shrull v. Rapasardi*, 33 Colo.App. 148, 517 P.2d 860 (1973). The fact that the necessity for maintenance of the ditch on the Club land has not arisen in the past does not destroy the drainage easement nor the rights of maintenance and of entry relating thereto. *Neville, supra; Knudson, supra; Shrull, supra.*

We see no merit in the contentions of defendants that plaintiffs are precluded by laches or estoppel from now asserting a right of entry to defendants' land for ditch maintenance purposes. This right is based upon necessity and the use is confined to the times, places and extent necessary. *Knudson v. Frost, supra.* The necessity not yet having arisen, there is no basis for any laches or estoppel.

Plaintiffs are entitled to a decree declaring their right to drain their lands across defendants' lands through the Putnam Drainage Ditch and quieting their title to their drainage easement therein. *See Leonard v. Buerger, supra; Graybill v. Corlett*, 60 Colo. 551, 154 P. 730 (1916). Since the right to maintain the ditch is incident to the easement, and "includes repairs, ingress and egress with space therefor as exigency may show," *Neville v. Louden Irrigating Canal & Reservoir Co., supra*, this should be included in the decree. The trial court's judgment to the contrary is reversed.

## II.

Plaintiffs also contend that they are entitled to enjoin defendants from interfering in the future with their drainage easement, whether by placing obstructions in the ditch, by refusing to maintain the same, or by prohibiting plaintiffs from entering defendants' lands to maintain the ditch. We agree.

In denying injunctive relief to plaintiffs, the trial court relied on its findings that plaintiffs have sustained no damage and that there was no evidence that they will be damaged in the future. The president of the Club testified that, despite its water right, it has no present plan to construct any dam or other obstruction in the ditch. He did state, however, that he would not voluntarily give plaintiffs access to the Club property to maintain the ditch. There is, therefore, a possibility that there may be obstructions placed in the ditch in the future, and there is almost a certainty that, absent an injunction, plaintiffs will be prohibited from entering the Club property to maintain the ditch if and when the need arises. Also, plaintiffs' argument, that in the event of obstruction of the ditch, money damages would not be an adequate or a proper remedy, is persuasive.

There is no immediate and imminent injury to plaintiffs, since the Club professes that it has no present intent to construct any dams in the ditch and there is no present requirement for maintenance. However, this is an action under C.R.C.P. 105, and the manifest intent of section (a) of this rule is to provide "a complete adjudi-

cation of the rights of all parties" in one action. *Hopkins v. Board of County Commissioners*, 193 Colo. 230, 564 P.2d 415 (1977). Absent more positive assurance than given here, injunction should not be denied, *see Slide Mines, Inc. v. Left Hand Ditch Co.*, 102 Colo. 69, 77 P.2d 125 (1938); *Calvaresi v. Brannan Sand & Gravel Co., supra,* and it would serve no useful purpose to require plaintiffs to file a new action in the future when the injuries have already occurred.

The judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.

STERNBERG, J., concurs.

SMITH, J., concurs in part and dissents in part.

SMITH, Judge, concurring in part and dissenting in part.

In part I of its opinion the majority has directed that the trial court confirm the right of the plaintiffs to drain their lands through the Putnam Ditch. They have also required that the right of plaintiffs to enter upon defendants' land for the purpose of maintaining the ditch be specifically set forth in the trial court's decree. With this portion of the opinion I concur. In my view such a decree provides "a complete adjudication of the rights of all parties" under C.R.C.P. 105.

In part II, however, the majority directs the trial court to issue coercive orders prohibiting defendants, in perpetuity, from any conduct which infringes upon the rights granted to plaintiffs in the decree. To this portion of the opinion I must dissent as it goes far beyond adjudication of the rights of the parties.

The very existence of our legal system depends upon the presumption that an individual will not, knowingly and intentionally, violate the rights of another, particularly where those rights are clearly defined and understood. Ordinarily, for a violation of those rights, the law provides adequate remedies. Only if there is no plain, speedy, and adequate remedy at law will a court

even consider exercising its equitable power by entering a permanent injunction. And then it will not do so unless there is a *clear,* and *present* danger of *immediate* and *irreparable* harm which is practically certain to result if it fails to act.

Here, the trial court found that plaintiffs had suffered no damages, and that there was no conclusive evidence that they would be damaged in the future, even assuming dams or obstructions were placed in the ditch. There was ample evidence, albeit disputed, to support these findings of fact. Since entitlement to injunctive relief is a separate and distinct issue from that of the declaration of rights, and since these findings relate solely to the injunction issue, I believe they are binding on us. *Page v. Clark*, Colo., 592 P.2d 792 (1979). These findings are buttressed by defendants' own admission that there are no present plans to construct dams or obstructions in the ditch.

The majority concludes that, absent an injunction, plaintiffs will be prohibited from entering club property to maintain the ditch if, and when, the need arises, they base this conclusion solely on the testimony by the president of defendant Duck Club, during trial, that he would not "voluntarily" give plaintiffs access for maintenance. It seems to me that the majority has forgotten that this statement was made at a time when plaintiffs' *right* to maintain the ditch was being contested and that any other position would have been inconsistent with the claim defendant was asserting on the trial. In that frame of reference it can hardly be construed as a threat to disregard or disobey the court's decree.

Thus, under the circumstances presented, issuance of an injunction is premature. There is not even an indication that defendants will not respect plaintiffs' rights granted by the decree to be entered herein. Should there be, in the future, an actual or threatened violation of plaintiffs' rights, injunctive relief may be sought and, if justified, granted. Plaintiffs at this time have shown no "immediate and imminent" threat of injury, and the likelihood of such injury in the future is conjectural. *See Pueblo v.*

*Flanders*, 122 Colo. 571, 225 P.2d 832 (1950); *Slide Mines, Inc. v. Left Hand Ditch Co.*, 102 Colo. 69, 77 P.2d 125 (1938).

Therefore, I would order entry of a decree as the majority does in Part I of their opinion, and deny the issuance of permanent injunctive orders at this time.