No. 21790.

JAKE SCHLAGEL, D/B/A AURORA AND EAST DENVER TRASH
DISPOSAL, INDIVIDUALLY AND AS A REPRESENTATIVE OF A
CLASS OF PERSONS SIMILARLY SITUATED, DAVID BRANDT,
BESTWAY DISPOSAL, A PARTNERSHIP, J. W. BURBACH HAUL-
ING SERVICE, COOK AND BOLGER, A PARTNERSHIP, HERB DAL-
BERG, D/B/A DALBERG'S HAULING SERVICE, GEORGE FLINT,
D/B/A ARVADA RUBBISH REMOVAL, METROPOLITAN TRASH,
INC., GEORGE GETTMAN, JAKE GINTHER, VIC GINTHER,
GRAFF'S RUBBISH REMOVAL, MARION GILBREATH, D/B/A
WHEATRIDGE DISPOSAL SERVICE, C. N. NIBLACK RUBBISH
REMOVAL, HAROLD ROBINSON, ADAM SCHLAGEL, D/B/A A
& F TRASH DISPOSAL, GEORGE SCHIMPF, EDWARD SCHNORR
AND ROBERT SCHNORR, D/B/A IDEAL DISPOSAL CO., GEORGE
SHAFFER, ALFRED STRASSHEIM, C. E. STRASSHEIM, ADAM
TREBER & SON, A PARTNERSHIP, N. W. COYLE, MOUNTAIN
VIEW RUBBISH REMOVAL, LAKEWOOD DISPOSAL SERVICE,
ELMER LEICHNER, ROBERT LEICHNER, LARRY LEICHNER AND
JOHN LEICHNER, D/B/A BESTWAY, DONALD S. JOHNSON,
D/B/A JOHN'S TRASH SERVICE, SANITARY GARBAGE & TRASH
REMOVAL SERVICE, SANITARY GARBAGE & TRASH REMOVAL
CORPORATION, A COLORADO CORPORATION, BECKER'S TRASH
SERVICE, INC., THOMAS E. SALMON, JR., D/B/A SECURITY
GARBAGE CO., ESTES SERVICE CO., GARBAGE SERVICE
CO., ESTES TRASH SERVICE, DENVER CLEAN UP SERVICE,
INC., BOB JOHNSON SERVICE, DECKER DISPOSAL, INC., MON-
ARCH DISPOSAL, ACE DISPOSAL SERVICE, DISPOSAL SERVICE
CO., FREDDIE'S RUBBISH REMOVAL, ENGLEWOOD LITTLETON
RUBBISH REMOVAL, RAY'S ASH & TRASH, BOULDER DISPOSAL,
INC., ALEX GERLACH & SONS, AND DENVER WASTE DISPOSAL
*v.* ALBERT HOELSKEN AND LEONARD AMATO, D/B/A ACTIVE
RUBBISH SERVICE, THE PUBLIC UTILITIES COMMISSION OF
THE STATE OF COLORADO, AND AL WIMBERLY, D/B/A AL'S
HAULING SERVICE.

(425 P.2d 39)

Decided March 13, 1967.     Rehearing denied April 3, 1967.

JONES, MEIKLEJOHN, KEHL & LYONS, ROBERT P. GRUETER, for plaintiffs in error.

ZARLENGO, ZARLENGO, SEAVY & MULLIGAN, for defendants in error Albert Hoelsken and Leonard Amato, d/b/a Active Rubbish Service.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, ROBERT LEE KESSLER, Assistant, for defendant in error Public Utilities Commission of the State of Colorado.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

THIS matter is here on writ of error to the Denver district court, wherein is sought the reversal of a judgment declaring and decreeing that the Public Utilities Commission of the State of Colorado is without authority to regulate those engaged in the business of hauling ashes, trash and other waste material within the State of Colorado. In addition to the declaratory judgment, the court entered an injunction preventing the Public Utilities Commission from regulating or in any manner interfering with the businesses of the defendants and others similarly engaged.

Defendants in error, as plaintiffs in the trial court, had been engaged in removing various waste materials from premises in Arapahoe County when they were ordered by the Public Utilities Commission to cease and desist on the ground that they were operating unlawfully in that they had failed to obtain a certificate of public convenience and necessity from the Public Utilities Commission, pursuant to C.R.S. 1963, 115-9-1 et seq. They then applied to the Commission for a certificate, but

their application was denied on the ground that public convenience and necessity did not warrant the issuing of additional certificates in the county, which was already served by other certified carriers, such as Jake Schlagel, d/b/a Aurora and East Denver Trash Disposal, one of the plaintiffs in error and a named defendant in the trial court.

The decisive question for our determination on this writ of error is:

*Was the trial court correct in determining that those engaged in the business of hauling ashes, trash and other waste material are not a "motor vehicle carrier" as defined in C.R.S. 1963, 115-9-1 (4) (a) and therefore are not a public utility as defined in C.R.S. 1963, 115-9-2 and 3?*

We answer this question in the negative.

We hold that the trial court was in error and that the businesses affected by the trial court's ruling are a public utility and subject to regulation by the commission within the purview of the statute.

Section (4) (a), *supra*, defines a motor vehicle carrier as:

"* * * every corporation, person, firm, association of persons, lessee, trustee, receiver or trustee appointed by any court whatsoever, owning, controlling, operating or managing any motor vehicle used in serving the public in the business of the transportation of persons or property for compensation as a common carrier over any public highway between fixed points or over established routes, or otherwise, whether such business or transportation is engaged in or transacted by contract, or otherwise."

The trial court held, *inter alia*, that ashes, trash, rubbish and similar material being transported by the persons here involved do not constitute property within the meaning of the above statute. The court then reasoned that because the various trash haulers are not engaged in either the transportation of persons or prop-

erty they are not within the act. With this construction by the trial court we do not agree. ·

Although it is not an easy matter to define the word "property," when one examines the various decisions from other jurisdictions, we nevertheless hold that the word as applied to the act here in Colorado was intended to and does embrace the transportation for hire of matter and things which the parties herein remove from various households and establishments and haul to nearby dumps. In *Masgai v. Public Service Commission of Pennsylvania*, 124 Pa. Super. 370, 188 Atl. 599, the court there clearly stated:

"Nor can we accept the argument of appellant that because his dump trucks are frequently used in the haulage of garbage, ashes, cinders, and other refuse to the dump or incinerator, that such materials are not property as contemplated by the common carrier section of the Public Service Company law. Although the owner of such materials may regard them as of no value, still the right to their possession and the need for their disposal are within the control of the individual owner. All of these materials have certain valuable uses under varied circumstances, and even though the owner desires to dispose of or destroy such materials, the right of property continues until disposed of or destroyed. In performing such disposal service, appellant was clearly engaged in the business of a common carrier."

Again, in *State v. Diamond Tank Transport*, 2 Wash. 2d 13, 97 P.2d 145, we find the following apt quotation:

"The question then arises whether the garbage which respondent contracted to collect, haul, and dispose of had a property value. The specifications which, as stated, were a part of the contract, defines 'garbage' as follows: 'Garbage shall be held to mean and include all accumulations of household waste matter which has been discarded as of no further value to the owner thereof, including ashes, cinders, trade waste, lawn cuttings, grass, rags, bottles, papers, broken household

furniture, small dead animals, boxes, barrels, shrubs, small trees, small limbs of trees, scraps of boards of lumber, hollow material or ware; rubbish in general, and every accumulation of animal, fruit or vegetable matter that attends the preparation, use, cooking, storage or handling of meat, fish, fowl, fruits or vegetables; * * *

"Whether all of the things mentioned in this definition have a property value it is not necessary here to determine; but such things as ashes, cinders, broken household furniture, and vegetable matter, and at least some of the others, have. Masgai v. Public Service Commission, 124 Pa. Super. 370, 188 A. 599; Jansen Farms, Inc., v. City of Indianapolis, 202 Ind. 138, 171 N.E. 199, 72 A.L.R. 514; City of Indianapolis v. Ryan, 212 Ind. 447, 7 N.E.2d 974; California Reduction Co. v. Sanitary Reduction Works, 199 U. S. 306, 25 S.Ct. 100, 50 L.Ed 204. The respondent was a contract carrier, and, without a permit from the department of public service, was operating illegally."

Although this court has heretofore not been confronted with this question, and even though some of the comments of other jurisdictions are helpful, yet we need not resort to them to determine what is meant to be included under the term "property." The business in which the parties herein are engaged has been subject to Public Utilities Commission regulations for a period of more than twenty years. Every one entering such business has invariably applied to the Public Utilities Commission for permission so to do, and there are now outstanding about 400 certificates, all of which constitute a valuable property right. Thus in interpreting the statute we must look to the long-continuing contemporaneous construction of the act by the legislature, the public officials charged with its administration, and by the public itself. It is to be noted that the legislature, *knowing fully well that the business has been regulated by the Public Utilities Commission,* has made no move in more than two decades to exempt such business from

regulation. Then in 1965 (see 1965 Perm. Supp., C.R.S., 115-9-1 (4)) following the decision of the Denver district court in this case, it amended C.R.S. 1963, 115-9-1 (4) expressly to include in the definition of "motor vehicle carrier," as follows: "any motor vehicle used in serving the public in the business of transportation of ashes, trash, waste, rubbish, and garbage, to and from disposal sites, and in the course of operations." By this enactment the legislature did not change the law; it merely clarified it. The action of the legislature was, in our view, a specific ratification of the interpretation given the general act by the Public Utilities Commission and the public over the many, many years in which the businesses herein affected were developed under regulation.

The judgment is reversed and the cause remanded to the trial court to vacate its declaratory judgment and the injunction and to dismiss the action.

MR. JUSTICE HODGES not participating.