Gerald PERCIVAL and Leonara Kay
Percival, Plaintiffs and
Respondents,

v.

Floyd W. COOPER and Anne Cooper, his
wife, Defendants and Appellants.

No. 13548.

Supreme Court of Utah.

July 31, 1974.

F. Briton McConkie, of Kirton, Mc-Conkie, Boyer & Boyle, Salt Lake City, for defendants and appellants.

George H. Searle, Salt Lake City, for plaintiffs and respondents.

ELLETT, Justice:

Plaintiffs sued defendants, asking that defendants be ordered to specifically perform and to convey by warranty deed a one-half acre of land. Plaintiffs did not ask for rescission or for damages.[1]

Defendants had advertised for sale one-half acre. Plaintiffs paid $1,000 as earnest money and received a receipt indicating that the money was on one-half acre building lot. Before the earnest money was paid, the land was pointed out to plaintiffs by defendants, and they examined it. The property was to be surveyed in order to obtain the proper description, and the parties were each to pay one half of the survey fee. The defendants told the plaintiffs that the east line of the property being sold would have to be eight feet west of an old building located on the land being retained by defendants.[2] Mr. Percival was present when the survey was made and expressed satisfaction with the land included in the survey. The plaintiffs paid the purchase price and received the warranty deed pursuant to the survey, a copy of which they already had. The deed described the land by metes and bounds as a rectangular area 114.5 feet by 165 feet. It did not indicate the area of the property either in square feet or by acreage. Later plaintiffs discovered that they could not erect a duplex and keep horses on the property unless they owned at least one-half acre of ground. They then commenced this suit.

The plaintiffs proved at trial that the defendants represented that they were selling one-half acre of land, and the trial judge ordered the defendants to convey by warranty deed certain described property containing an area 132 feet by 165 feet.

1. Plaintiffs admit in their pleadings that defendants offered to pay back the purchase price, but plaintiffs refused to accept it.

2. In order for the defendants to remodel the old building as they intended, the zoning ordinance required the building to be set back at least eight feet from the property line.

The law is stated in 23 Am.Jur.2d, Deeds §§ 249 and 250, as follows:

> Parol evidence is admissible to show that a mistake was made in the description of the land in question where there are sufficient other facts in the description to identify the land. However, the purpose of admitting extrinsic evidence with respect to the description of a deed is to explain an ambiguity or to locate the property conveyed on the ground, not to alter or contradict the instrument; hence a court may not, on the theory of correcting an ambiguity, in effect reform the deed.
>
> Where the description of premises conveyed in a deed is definite, certain, and unambiguous, extrinsic evidence cannot be introduced to show that it was the intention of the grantor to convey a different tract or that he did not intend to convey all of the land described. Hence, generally speaking, neither party can show by extrinsic evidence that more or less passed than is described in the deed referred to. Evidence which purports to show that the grantor intended to convey land different from that which, by unambiguous words, the deed purports to convey will not be received. In other words, where there is no inconsistency on the face of a deed, and, on application of the description to the ground, no inconsistency appears, parol evidence is not admissible to show that the parties intended to convey either more or less or different ground from that described.

There was no ambiguity whatsoever in the deed given. Plaintiffs got the very land which was pointed out to them and which was surveyed in Mr. Percival's presence. If he had used simple arithmetic, he would have found that the deed conveyed only 18,850 square feet of land.[3] These plaintiffs got what their deed calls for, and they cannot get more by way of a suit for specific performance when the land covered by the deed has already been delivered.

The judgment is reversed. Costs are awarded to the appellants.

CALLISTER, C. J., and HENRIOD and TUCKETT, JJ., concur.

CROCKETT, Justice (dissenting):

It is to be borne in mind that this case is in its essence an action to reform a deed to compel the defendant grantors to keep the promise they had made, both orally and in writing, to convey to the plaintiffs one-half acre of land. The deed itself is not properly regarded as the sole agreement between the parties. It was executed unilaterally by the defendant grantors, purportedly to fulfill their prior written commitment.

As cited below, the authorities are abundant and unanimous that where there has been a mutual mistake, or a unilateral mistake, accompanied by inequitable conduct by one of the parties, a court of equity will order correction of the deed to conform to and fulfill the obligation of a prior written agreement. This was the purpose and effect of the findings and decree entered by the trial court.

The defendants had over a period of time advertised for sale tracts of land containing one-half acre which met the requirements for horses or duplexes. The defendant Anne Cooper, who was the co-owner of the property to be sold, was a licensed and experienced real estate saleswoman. It is indicated that she was familiar with the entire situation including the zoning regulations. In the talks with the plaintiffs, their interest in the keeping of horses was discussed. The receipt executed by defendants for the plaintiffs' first payment stated that the money received was for "one half Acre." Even after the survey had been made and the defendants knew of its results, they issued a receipt acknowledging payment in full for "one half acre." After the plaintiffs discovered

---

3. An acre of ground contains 43,560 square feet and, therefore, one-half acre would contain 21,780 square feet.

that the deed gave only about eighty-five one-hundredths of the one-half acre, instead of the full one-half acre the defendants had agreed to convey, they made request of the defendants that the deed be corrected to give the amount of property that had been agreed upon and committed in writing. The discussions availing nothing, the plaintiffs commenced this action seeking performance of the agreement and reformation of the deed.

It should be noted that the statute of frauds presents no problem here. Its requirements are satisfied by the written receipts; and also by the part performance. Neither is the parol evidence rule an impediment. It cannot reasonably be contended that the receipts and/or the deed in this case represent the complete agreement of the parties. Moreover, the rule does not apply in suits to reform written instruments where there was no meeting of the minds of the parties due to mistake, fraud, or inequitable conduct by one of the parties.[1]

The law is well established and supported by many authorities that deeds may be reformed where that is necessary to carry out the intent and agreement of the parties. The governing principle was announced by the United States Supreme Court as long ago as 1892 in the case of Simmons Creek Coal Co. v. Doran: " . . . the jurisdiction of equity to reform written instruments, where there is mutual mistake, or mistake on one side and fraud on the other, is undoubted." [2]

This sound doctrine is reflected in the text of American Jurisprudence under the title Reformation of Instruments:

The reformation of written instruments is one of the oldest branches of equity jurisprudence. . . .

While the right to have reformation is ordinarily limited to written agreements, the right of reformation is not restricted in its application to any class or kind of conventional instruments, with regard either to the form or the subject matter of the contract between the parties.

*Reformation may be had with respect to* instruments operating inter vivos and evidencing executed contracts, such as *deeds,* including mineral deeds, partition deeds, deeds of appointment or settlement, and conveyances of homesteads.[3]

The test to be applied in determining whether a deed is reformable is set forth with clarity in Powell's treatise on real property, which is amply supported by cases and other respected authorities.

An equitable proceeding to reform a deed or other written instrument may have any one of three functions: (1) to get back for the grantor, mortgagor, or vendor something from which he did not intend to be parted; or (2) *to acquire for the grantee,* mortgagee, or vendee, *something which he thought he was going to get, but has not*; or (3) to adjust between persons named as grantees, their intended rights so that each will have what he was intended to get, but no more. The basis for including the dis-

---

1. Janke v. Beckstead, 8 Utah 2d 247, 332 P. 2d 933. See also 66 Am.Jur.2d Sec. 118, at p. 645: "Generally, and in accordance with the principle that parol evidence is admissible in an action for reformation, the courts will, in considering the grounds for reformation, look into the surrounding circumstances and will take into consideration all facts which tend to throw light upon the intention of the parties." To this effect see also Sine v. Harper, 118 Utah 415, 222 P.2d 571, citing Williston on Contracts.

2. 142 U.S. 417, 435, 12 S.Ct. 239, 245, 35 L.Ed. 1063. See also Janke v. Beckstead, note 1, supra; Intermountain Farmers Ass'n. v. Peart, 30 Utah 2d 201, 515 P.2d 614; and Naisbitt v. Hodges, 6 Utah 2d 116, 307 P.2d 620, 76 C.J.S. Reformation of Instruments § 42. In accord: Powell on Real Property, Vol. 6, Para. 903; Tiffany, Real Property, 3d ed., Vol. 4, Sec. 385 (See also cases in 1974 Supplement thereto); Thompson on Real Property, Vol. 8A, Sec. 4458.

3. See 66 Am.Jur.2d "Reformation of Instruments," Sec. 1 at p. 526, Sec. 29 at p. 556, Sec. 30 at p. 556–557.

cussion of reformation at this point is its applicability to deeds; but the same doctrines apply to other instruments such as mortgages, contracts relating to land, and leases.

The power to obtain the reformation of a written instrument exists when it can be satisfactorily proved (1) *that the instrument, as made, failed to conform to what both parties intended*; or (2) that the claiming party was mistaken as to its factual content and the other party, knowing of this mistake, kept silent; or (3) that the claiming party was mistaken as to its factual content because of fraudulent affirmative behavior of the other party. In the absence of some one of these situations relief in the form of reformation cannot be obtained.[4]

Other authorities, too numerous to list herein, affirm the principles just stated. A few examples should suffice: The test at 66 Am.Jur.2d, pp. 554–555, states:

A written instrument may be reformed where there is ignorance or a mistake on one side and fraud or inequitable conduct on the other . . . Thus, unilateral mistake may be the basis for relief when it is accompanied by the fraud of, or is known to, the other party.

In Phillips v. Pitts,[5] a case analogous to our present one, the Supreme Court of Washington approved reformation of a deed to include water rights which had been part of the agreement, but were omitted from the deed, assigning reliance upon the proposition that a deed may be reformed to conform to the contract to sell land.[6]

Considering the present case in the light of the law above stated there are only two alternatives: Either, (a) the defendants thought they could, and intended to, convey to the defendants a one-half acre tract as they agreed in writing to do. In that case the deed was made out under a mutual mistake of fact; in which case equity can clearly grant relief as did the trial court.[7] Or, (b) the defendants knew that they could not convey, and were not conveying, the full one-half acre which they knew that the plaintiffs thought they were getting, but defendants nevertheless remained silent and conveyed the smaller tract. Moreover, under the latter alternative, they not only remained silent, but gave a receipt for the purchase price, reciting that it was for one-half acre. This would amount to fraudulent deception, or at the very least inequitable conduct, for which equity should grant relief as the trial court did.[8] This conclusion is supported by the express finding of the trial court that "at the time the [deed] was given, the defendants were aware that they possessed a full one-acre piece of realty *and had instructed the surveyor to survey a smaller amount* than a one-half (½) portion thereof to be conveyed to the plaintiffs." This finding of fact by the trial court is supported by the testimonies of both the plaintiffs and the defendants.

It is suggested that the plaintiffs should have used "simple arithmetic" to ascertain that the metes and bounds description included only about eighty-five one-hundredths of a half acre. I agree with the trial court that it is unfair and unrealistic to expect the plaintiffs as ordinary lay persons to know that a half acre of land contains 21,780 square feet; and to perceive that the description in the deed covered only 18,850 square feet.

4. Powell on Real Property, Vol. 6, Para. 903; Restatement of Contracts, Secs. 505, 509; 66 see also, 3 Corbin on Contracts, Sec. 614; Am.Jur.2d, Sec. 12.

5. 33 Wash.2d 541, 206 P.2d 275.

6. 66 Am.Jur.2d, Sec. 48.

7. Notes 2, 3, 4, and 6, supra.

8. "Silence may be, but is not necessarily, equivalent to a false representation. Suppression of the truth may amount to a suggestion of falsehood; and if, with the intent to deceive, either party to a contract conceals or suppresses a material fact which good faith requires him to disclose, there is the equivalent of a false representation." 66 Am.Jur.2d, Sec. 24, at p. 553.

Applicable to this point is the case of Broida v. Travelers Ins. Co.,[9] wherein the Supreme Court of Pennsylvania stated the principle which should govern here:

> . . . [the] negligent failure of the plaintiff to discover a variance between the instrument as written and the mutual understanding of the parties is not fatal to his right to have it reformed.[10]

Whatever else may be said about the matter, the question as to whether the plaintiffs were negligent and therefore estopped from complaining of the defendants' conduct is a question of fact; and the trial court made no such finding, but found the issues for plaintiffs.

In summary, there is ample credible evidence to support the view adopted by the trial court: that the defendants advertised and otherwise represented to the plaintiffs that they were selling them a one-half acre tract of land as desired by the plaintiffs; that the plaintiffs had bargained for, and bought and paid for that amount of land; there is no finding that the plaintiffs were either careless or negligent in assuming that the deed contained the one-half acre as represented, or that they were lacking in diligence in discovering the mistake and seeking redress therefore. This court has been consistent and invariable in declaring that in equity cases we will not disturb the findings of the trial court unless the evidence clearly preponderates against them.[11]

In consequence of what has been said above, it is my opinion that the trial court was right in thinking it unconscionable to permit the defendants to make the representations and the agreement to sell the necessary "one half acre," then to violate their agreement by conveying a lesser quantity; and that he did that which equity and justice requires by decreeing that the defendants keep their written commitment to convey the promised one-half acre of land. (All emphasis added.)

9. 316 Pa. 444, 175 A. 492.

10. Id., at p. 494, 175 A. at p. 494.

11. Barker v. Dunham, 9 Utah 2d 244, 342 P. 2d 867.