No. 27271

**United States Disposal Systems, Inc., a Colorado corporation, and Decker Disposal, Inc., a Colorado corporation v. The City of Northglenn, a Colorado municipal corporation; Maxine Foster, City Clerk; Alvin Thomas, Mayor; Craig Camp, Chief of Police Department; Stanley Bender, City Manager; and the City Councilmen of Northglenn, Colorado: Odell C. Barry, Verlin Burns, James P. Dawson, Jr., Mary Ellen Kettlekamp, Harold T. Hodges, Donald E. Burback, Elwood E. Curtis and John M. Hutchins**

(567 P.2d 365)

Decided June 6, 1977. Opinion modified and as modified rehearing denied August 22, 1977.

William Andrew Wilson, for petitioners-appellants.

Carroll and Bradley, John S. Carroll, for defendants-appellees.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

This is an appeal from a district court ruling which upheld an ordinance authorizing the City of Northglenn to provide municipal trash collection services to persons residing in residential buildings containing not more than five units. We affirm.

On October 13, 1971, Northglenn enacted Ordinance No. 112, which authorized the city to engage in trash and garbage removal services to houses, mobile homes, and apartment buildings containing five units or less. The ordinance excluded dwellings of over five units, hotels, motels, restaurants, and other commercial or industrial buildings. The ordinance stipulated that no fees would be charged for trash collection and disposal service, except for "special pick-up services." Occupants of dwellings eligible for city trash collection nevertheless could provide their own refuse disposal, or contract with persons other than the city for trash collection and disposal.

The plaintiffs (appellants here) commenced action against the city alleging: (1) the ordinance constitutes an invalid use of police power; (2) under the ordinance there is an unconstitutional taking of the plaintiffs' property, being their common carrier rights represented by the certificates issued to them by the Public Utilities Commission (P.U.C.); (3) the ordinance unconstitutionally usurps power, since the state preempted the power to regulate the refuse industry by delegation of authority to the P.U.C.; (4) since the ordinance deprives the plaintiffs of property without notice or compensation, it constitutes an invalid condemnation by the city; and (5) the ordinance penalizes city residents because those who use the plaintiffs' services would be "paying twice" for trash service, once by

paying the plaintiffs' fees, and again by paying city taxes which support the city's refuse services. Judgment for substantial damages and an injunction were prayed.

The court granted Northglenn's motion for summary judgment. On appeal we accepted jurisdiction from the Colorado Court of Appeals.

I.

The plaintiffs contend that the police power issue can be determined only upon resolution of specific questions of fact and, therefore, the court was precluded from granting the motion for summary judgment.

■ Summary judgment is proper only when there are no genuine issues as to any material fact and, therefore, the issues can be properly resolved as matters of law. *See, e.g., Enger v. Walker Field*, 181 Colo. 253, 508 P.2d 1245 (1973); *Abrahamsen v. Mountain States T. & T.*, 177 Colo. 422, 494 P.2d 1287 (1972). We dispose of the asserted presence of factual issues by assuming all of plaintiffs' allegations to be true, and resolving all factual contentions of the plaintiffs in their favor. Viewing the case in this posture, summary judgment was proper.

II.

■ In adopting the ordinance the city council found that it was necessary for the preservation of health and safety. Unless a city council acts arbitrarily or capriciously, such a determination is binding upon us. *Lyman v. Town of Bow Mar*, 188 Colo. 216, 533 P.2d 1129 (1975). Our statutes give municipal corporations power to provide for the safety and preserve the health of the inhabitants. Section 31-12-301, C.R.S. 1973. Portions of section 31-12-101, C.R.S. 1973 provide as follows:

"(12) To do all acts and make all regulations which may be necessary or expedient for the promotion of health or the suppression of disease."

* * * *

"(20)(d) To regulate and prevent the throwing or depositing of ashes, garbage, or any offensive matter in . . . any street, avenue, alley or public ground;"

* * * *

"(79) To pass all ordinances and rules and make all regulations proper or necessary to carry into effect the powers granted to cities or towns. . . ."

■ It is well settled that a municipal regulation, having a fair relation to the protection of human life and the protection of public convenience and welfare, constitutes a reasonable application of the police power. *See Denver v. D. & R. G. Company*, 63 Colo. 574, 167 P. 969 (1917), *aff'd*, 250 U.S. 241, 39 S.Ct. 450, 63 L.Ed. 958 (1919). It follows that this ordinance constituted a reasonable regulation concerning the health and general welfare of society and, therefore, was for a proper purpose under the police power. *See Combined Communications Corporation v. Denver*, 186 Colo. 443, 528 P.2d 249 (1975).

## III.

The plaintiffs contend that the ordinance deprives them of property without due process and compensation.

Due process, as it applies in this case, requires only that a municipal ordinance enacted under the police power shall not be unreasonable, arbitrary or capricious, and that it bear a rational relation to a proper legislative object sought to be attained. *See Pleasure Bay Apartments v. City of Long Branch*, 66 N.J. 79, 328 A.2d 593 (1974). As already indicated, this ordinance was enacted out of a valid concern for, and a reasonable relationship to, the public health, safety, and general welfare. A presumption of reasonableness attaches to ordinances promulgated for the health, safety and welfare of the public. Due process guarantees, therefore, have not been violated.

As to the condemnation issue, it is conceded that trash collection is a regulated industry. The P.U.C. certificates held by the plaintiffs gave them a non-exclusive right to engage in trash collection and disposal. The ordinance in question does not *destroy* plaintiffs' rights to collect and dispose of trash and garbage. The vehicular P.U.C. certificates held by the plaintiffs do not guarantee them the right to do business as a monopoly. *See Miller Bros. v. P.U.C.*, 185 Colo. 414, 525 P.2d 443 (1974); and *Red Ball Motor Freight v. P.U.C.*, 185 Colo. 438, 525 P.2d 439 (1974). The contention that entry by the city into the trash collection and disposal business constituted a taking without compensation is without merit.

"'The clause prohibiting the taking of private property without compensation is not intended as a limitation of those police powers which are necessary to the tranquility of every well-ordered community. . . . It has always been held that the legislature may make police regulations, although they may interfere with the full enjoyment of private property, and although no compensation is made.'" *California Reduction Co. v. Sanitary Reduction Works*, 199 U.S. 306, 50 L.Ed. 204, 26 S.Ct. 100 (1905).

## IV.

The plaintiffs claim that Northglenn, as a statutory municipality, has unlawfully preempted the power of the P.U.C. In engaging in trash removal the plaintiffs and the city were operating public utilities. In this, the plaintiffs are under the jurisdiction of the Public Utilities Commission and Northglenn is not. In granting authority to the Commission, *Colo. Const*. Art. XXV provides:

"[N]othing herein shall effect the power of municipalities to exercise reasonable police and licensing powers, nor their power to grant franchises; and provided, further, that nothing herein shall be construed to apply to municipally owned utilities."

This provision establishes that (1) the Commission cannot interfere with towns and cities in the exercise of their police power, and (2) that the Commission has no jurisdiction over municipally owned utilities. This in itself negates the plaintiffs' argument that Art. XXV preempts the power of a city to operate a refuse collection business. They base their contention upon *Givigliano v. Veltri*, 180 Colo. 10, 501 P.2d 1044 (1972). It is, how-ever, inapplicable. There the city of Trinidad adopted an ordinance giving itself the *exclusive* right to engage in trash removal within the city and prohibited others from doing so. We held that the city could not prohibit other trash haulers from doing business. Northglenn has not made this prohibition, and does not restrict others from refuse collecting.

Further, the case of *City of Thornton v. P.U.C.*, 157 Colo. 188, 402 P.2d 194 (1965), supports the proposition that the regulation of trash collection by the P.U.C. does not preclude Northglenn from establishing its own municipal trash service. In *Thornton*, we cited *Colo. Const.* Art. V, §35, which provides:

"The general assembly shall not delegate to any special commission . . . any power to make, supervise or interfere with any municipal improvement. . . ."

In that opinion, we stated that:

"By force of this article the legislature could not, by any law, vest in the Public Utilities Commission or any agency with like powers and duties jurisdiction to interfere with the municipal improvements such as the water and sewage facilities acquired by Thornton. . . ."

In that case, Thornton was authorized expressly by statute to obtain and operate water and sewer utilities. Subsections 31-12-101(34-40), C.R.S. 1973. As already stated, we rule that there is statutory authorization giving Northglenn the power to establish trash collection and disposal services. Enactment of the ordinance does not conflict with authority delegated to the P.U.C.

## V.

We find no merit in the argument that there are those who are "paying twice" for trash service. An enterprise which employs night watchmen cannot validly complain that it is paying twice for night police service. Further, we approve the trial court's ruling that the classification of units and establishments was reasonable and valid. *See Glendale v. Trondsen*, 48 Cal.2d 93, 308 P.2d 1 (1975).

Judgment affirmed.

MR. JUSTICE LEE, MR. JUSTICE ERICKSON and MR. JUSTICE CARRIGAN dissent.

MR. JUSTICE ERICKSON dissenting:

I respectfully dissent. The precise issue before this court is the propriety of the entry of summary judgment in favor of the defendant City of Northglenn. The key predicate for entry of a summary judgment is that no material issue of fact remains to be resolved by the trier of fact and that the movant is entitled to judgment in his favor as a matter of law. The majority opinion purports to resolve this question by "resolving all factual contentions of the plaintiffs in their favor." Examination of the plaintiffs' factual contentions and the underlying substantive issues in this case reveal, however, that summary judgment was clearly improper on the record in this case.

The substantive issues boil down to these: (1) Is the municipal ordinance in this case in conflict with state regulation of a matter of statewide concern and thus invalid? (2) Is the municipal ordinance in this case an improper exercise of the municipal police power because it is not rationally related to an area of legitimate local concern? (3) Does the municipal ordinance in this case operate as a taking or damaging of the plaintiffs' property rights without compensation? Entry of summary judgment for the defendant was improper for each of these claims.

First, in *Givigliano v. Velti*, 180 Colo. 10, 501 P.2d 1044 (1972), we examined our state constitution and legislative enactments and concluded that:

"The constitution and the statutes of this state have therefore *given to the business of trash hauling the status of a matter of statewide concern*, subject to the jurisdiction of the Public Utilities Commission. Under such circumstances, Trinidad has no power to pass an ordinance which is, as here, *in conflict with the exercise* by the Commission of its statutory power." (Emphasis added.)
*See also Schlagel v. Hoelskin*, 162 Colo. 142, 425 P.2d 39 (1967).

In deciding whether a municipal ordinance fatally conflicts with state regulation in an area of state-wide concern, we have adopted a general rule which looks to the substantive character of the conflict. *See Lakewood Pawnbrokers v. City of Lakewood*, 183 Colo. 370, 517 P.2d 834 (1974) ("The test for determining whether such a conflict exists is whether it . . . proscribes, *burdens or limits* that which the statute authorizes."); *Ray v. City and County of Denver*, 109 Colo. 74, 121 P.2d 886 (1942) ("as the criterion of destrictive conflict . . . it seems evident that in the final analysis the courts revert to the determination of what might be called the factual question of whether the ordinance forbids the doing of a thing which the statute authorizes").

In this case, the City of Northglenn clearly attempted to do indirectly what the City of Trinidad could not do directly in *Givigliano v. Velti, supra*. Assuming the plaintiffs' factual contentions are correct, then we must credit the factual allegations in the plaintiffs' pleadings. Those

pleadings aver that: (a) "the effect of the Defendant, City of Northglenn, providing refuse collection service without a fee, in one stroke resulted in the elimination of the [trash collection] routes each of the Plaintiffs have spent years developing," (b) "there were no inadequacies in the service being provided by the Plaintiffs to the residents of the City of Northglenn, nor did *any* emergency exist to justify the injection of additional service," (c) "the City of Northglenn has thus *forced* its residents to use the municipal trash services it provides," and (d) as a result of the initiation of tax-supported trash service by the City of Northglenn, the plaintiffs *immediately* forfeited several thousand customers each (amounting to 99% of the affected market).

The power to provide "free" tax-supported services may operate as or more effectively than an outright prohibition in excluding state-regulated private enterprises from carrying on their business in a given municipality. This claim, based upon *Givigliano v. Velti, supra,* was the plaintiffs' theory of the case, and they should have been allowed an opportunity to prove it.

Moreover, insofar as we must credit the plaintiffs' allegations as true, it seems obvious that the regulatory scheme created by the State Legislature and the Public Utilities Commission will be completely abrogated with respect to the City of Northglenn. Given a "free" municipal trash-collection service, supported by a scheme of mandatory municipal taxation, what private, fee-charging trash service could possibly compete? To dismiss this conflict with the general proposition that the plaintiffs were never guaranteed the "right to do business without competition" ignores the plain economic reality that the city trash service is not a "competitor," but a monopolist armed with the power of public taxation. Accordingly, operating on the factual premises adopted by the majority, the municipal ordinance clearly conflicts with the state regulation of a matter of state-wide concern in this case and is indistinguishable from *Givigliano v. Velti, supra.* Summary judgment *for the defendant* was, therefore, improper because the defendant was not entitled to judgment (on the assumed facts) *as a matter of law.*

Finally, for three reasons the use of the artificial characterizations employed by the majority in this case will only generate future confusion over the proper bounds of state and local control in our form of state government. Under the reasoning of the majority opinion, no limits exist with respect to the power of municipalities to completely supplant state-regulated matters (even those clearly defined to be within a policy of "state-wide" concern), so long as they do it under the guise of merely "competing." The distinct economic advantage of subsidizing the operation with tax revenues is immaterial under the majority analysis. This distinction is totally unworkable and provides no realistic framework for the allocation of authority between governmental entities.

Second, the plaintiffs claimed that the ordinance was not rationally related to an area of legitimate local concern. While refuse collection is clearly related to public health and other matters of legitimate municipal concern, there was a *factual dispute* here as to the "rationality" of the relation between the *goal* of public health and the *means* of a monopoly for trash collection in this case. The only factual basis to support the need for the municipal trash service in this case was a "finding" by the Northglenn City Council, recited in the ordinance in question, which stated: "this ordinance is necessary to the immediate preservation of the public health and public safety, *in that accumulations of trash are hazardous to health and unsanitary.*" This latter statement is a mere truism which cannot dispose of the plaintiffs' countervailing factual contention that "there were *no inadequacies* in the service being provided by the Plaintiffs to the residents of the City of Northglenn." If, as the ordinance states, it was based upon a finding of some deficiency in the private trash removal systems in Northglenn, plaintiffs clearly contested the validity of this factual premise. Summary judgment was, therefore, improper. *See Moses v. Moses*, 180 Colo. 397, 505 P.2d 1302 (1973). Moreover, there is no basis for showing that the less drastic alternative of mere police power regulation of the private trash carriers in the city would not effectively resolve any problems. *See Givigliano v. Velti, supra* ("but the Trinidad ordinance here does not seek to impose police or licensing regulations upon the collection of trash.").

Third, the plaintiffs claimed that their "property," in the form of the Public Utilities Commission authorization to conduct a trash collection service in Northglenn as state-regulated common carriers, was condemned without compensation. Our Constitution provides that:

"Private property shall not be taken *or damaged* for public or private use, without just compensation."

*Colo. Const.* Article II, Section 15 (emphasis added). It is clear that the Public Utilities Commission authorizations in this case are a form of property right within the cognizance of this constitutional protection. *See Public Utilities Commission v. Grand Valley Rural Power Lines*, 167 Colo. 257, 447 P.2d 27 (1968). The question of whether the economic injury alleged in this case constitutes "damage" within the meaning of the constitutional provision is one of law. However, the legal issues cannot be resolved in a complete vacuum. The defendant in this case denied that its trash service resulted in any injury to the plaintiffs. Moreover, even assuming that the injury occurred as alleged, the creation of a monopolistic enterprise by a municipality, which immediately usurps 99% of the business of common carriers authorized by the state to operate in an area of state-wide concern, cannot be said to be outside of the constitutional protection as a matter of law. *Cf. Givigliano v. Velti, supra*; *Game and Fish Commission v. Farmers Irrigation Co.*, 162 Colo. 301, 426 P.2d

562 (1967).

Accordingly, I would reverse and remand for a trial on the merits.

MR. JUSTICE LEE and MR. JUSTICE CARRIGAN have authorized me to say that they join me in this dissent.