Paula Herzmark Executive Director Department of Local Affairs 1313 Sherman Street, Rm. 518 Denver, Colorado 80203
Dear Ms. Herzmark:
This opinion letter is in response to your letter of March 7, 1980, in which you inquired whether the town of Dacono, a statutory town, has the power and jurisdiction to enact and enforce an ordinance establishing controls over the contamination of any waters owned, controlled, or managed by the town.
QUESTIONS PRESENTED AND CONCLUSIONS
Your request for an attorney general's opinion presents essentially two questions:
1. Can a statutory town, in the exercise of its police powers, prohibit the pollution of any waters, water courses, ponds, etc., owned, controlled, or managed by the town?
 My conclusion is "no." Because the state has preempted the field of water pollution control, a statutory municipality must have an express grant of statutory authority to legislate on the subject. There is no statute expressly granting a statutory municipality the power to control and abate water pollution. The statutory grant of police power authority, C.R.S. 1973, 31-15-401(b) and (c), may possibly be, under its broadest interpretation, such an express grant. However, even if so construed, any ordinance enacted on the subject may in no way conflict with state law.
2. Can a statutory town establish pollution standards which are either more or less stringent than those established by the state?
 My conclusion is "no." The general assembly has properly declared the matter of water pollution to be one of statewide concern and has expressly preempted the field of establishing water quality standards for the prevention of the pollution of state waters. Since statutory municipalities have no express power to establish pollution standards, they are therefore precluded from doing so by the state's preemption.
ANALYSIS
In the State of Colorado, statutory towns and cities "derive their sole powers from constitutional authority which must be defined by (the) general law" of the general assembly. Cityof Aurora v. Bogue, 176 Colo. 198, 489 P.2d 1295 (1971);Town of Eckley v. Meyers, 116 Colo. 536, 181 P.2d 1014
(1947). Their powers are limited to those expressly set forth in the language of the statute or those necessary by implication to carry out express powers. It has generally been held that the statutes granting powers to statutory municipalities are to be strictly construed, and doubts as to the power of a statutory municipality are to be resolved against it. Seegenerally Svaldi v. City of Lakewood, 36 Colo. App. 155,538 P.2d 331 (1975); City of Aurora v. Bogue,supra; Town of Eaton v. Bouslog, 133 Colo. 130,292 P.2d 343 (1956); Citizens Utilities Co. v. Town ofRocky Ford, 132 Colo. 427, 289 P.2d 165 (1955).
The only exception to this principle of narrowly construing statutes granting powers to municipalities is found in the area of police powers. In C.R.S. 1973, 31-15-401(1)(b) and (c), statutory municipalities are expressly granted the power to provide for the general health, safety, and welfare of their citizens, and to declare and abate nuisances to the same. These provisions, as part of the general police power of a statutory municipality, have been given a relatively broad construction by the courts of this state. Thus, unless a city council or board of trustees acts arbitrarily or capriciously, a determination that an ordinance is necessary to preserve the public health and safety is binding. U.S. Disposal Systems v. Cityof Northglenn, 193 Colo. 277, 567 P.2d 369 (1977).
Nonetheless, even an ordinance enacted under a statutory municipality's police power may be invalid when that ordinance either conflicts with a state statute or the subject matter of the ordinance has been preempted by the state. Preemption occurs when the state statutes so comprehensively cover the relevant field that it is clear the general assembly desires to be the final authority on the subject. Absent anexpress power to legislate on the matter, a statutory municipality has absolutely no power to adopt ordinances concerning the preempted field. If an express power does exist, or if a grant of police power can be construed as an express power, a statutory municipality can only enact ordinances which are not in conflict with the statutes adopted by the state.U.S. Disposal Systems v. City of Northglenn,supra; City of Aurora v. Mitchell,144 Colo. 526, 357 P.2d 923 (1960); City of Golden v.Ford, 141 Colo. 472, 348 P.2d 951 (1960).
A conflict between an ordinance and a statute is found where an ordinance authorizes what a statute prohibits or prohibits what a statute expressly permits, authorizes, licenses, or requires.Lakewood Pawnbrokers, Inc. v. City ofLakewood, 183 Colo. 370, 517 P.2d 834 (1974); City ofAurora v. Mitchell, supra. Seealso Vala v. People, 174 Colo. 465, 484 P.2d 1204
(1971).
On the subject of water pollution control, there is no question that the state has preempted the field. In the Colorado Water Quality Control Act, C.R.S. 1973, 25-8-101 et seq., the general assembly has declared that pollution of state waters constitutes a "menace to public health and welfare, creates public nuisances, . . . and the problem of water pollution in this state is closely related to the problem of water pollution in adjoining states." C.R.S. 1973, 25-8-102(1). The general assembly has further declared that the "protection of the quality of state waters and the prevention, abatement, and control of pollution are matters of statewide concern." (Emphasis added.) C.R.S. 1973, 25-8-102(3). In subsection 4 of section25-8-102, the general assembly states that "(t)his article and the agencies authorized under this article shall be the final authority in the administration of water pollution prevention, abatement, and control." In C.R.S. 1973, 25-8-202, the statute further states that the water quality control commission, created by the Act, shall "develop and maintain a comprehensive
and effective program for prevention, control, and abatement of water pollution and for water quality protection throughout the entire state . . ." (Emphasis added.) Finally, in C.R.S. 1973,25-8-207(1)(b) the water quality control commission is given the power to cooperate with other units of government affected by Colorado's laws and regulations concerning water pollution and to hold hearings with respect to any standards or regulations concerning control and abatement of water pollution.
The only possible conclusion to be drawn from the all-encompassing nature of the Water Quality Control Act is that the state desires to preempt the field of water pollution control and to establish uniform standards and regulations to control and abate water pollution. The general assembly's declaration that water pollution is a matter of statewide concern and that the general assembly will be the final authority on its "prevention, abatement and control" must be honored. Therefore, in the absence of a grant of express power, a statutory municipality is without power to regulate and control water pollution.
Statutory towns and cities have no express power to prohibit pollution of waters owned, maintained, or controlled by them. Therefore, in my judgment, statutory municipalities have no power to legislate on the subject.
However, even assuming, arguendo, that the police power provisions due to their broad construction, could constitute a grant of express authority to a statutory municipality to enact ordinances for the control and abatement of water pollution, the preemption doctrine requires that those ordinances in no way conflict with the state statutes on the subject. This means that an ordinance can neither prohibit what the statutes expressly permit, authorize, license, or require, nor can it authorize what the statutes prohibit. LakewoodPawnbrokers, Inc. v. City of Lakewood, supra;see also Vela v. People, supra. Obviously, as a substantive matter, such an ordinance would be meaningless.
Dacono's ordinance No. 223, specifically submitted for my review, is an example of an ordinance which is in conflict with state law. It is much broader than the Water Quality Control Act and therefore must be invalid.
Given the discussion above, the question of whether Dacono has the power to establish its own pollution standards (as distinguished from the power to prohibit or abate pollution in a general way) is easily answered. Because the state has preempted the field of water quality control, see especially C.R.S. 1973,25-8-207(1)(b), Dacono may not legislate on the subject of pollution standards at all in the absence of express authority. It has no express authority to establish pollution standards. A statutory municipality does have express authority, in C.R.S. 1973, 31-15-710, to provide for the "cleansing and purification of water." However, subsequent subsections of that statute make clear that such authority pertains only to the construction of sewage systems and treatment works, and a statutory municipality is given several statutory options by which to accomplish that purpose. An express grant of authority to establish pollution standards per se cannot be construed from that provision, particularly in the face of such heavy state preemption. Therefore, Dacono cannot establish its own pollution standards.
SUMMARY
To summarize my opinion, because of state preemption of the field of water pollution control, Dacona cannot enact any ordinances to generally prohibit or provide for the abatement of water pollution which conflict in any way with state law, nor can it establish its own water pollution standards.
Very truly yours,
 J.D. MacFARLANE Attorney General
WATER POLLUTION WATER AND WATERWAYS MUNICIPAL CORPORATIONS STATUTES MUNICIPAL GOVERNMENT
C.R.S. 1973, 31-15-401(1)(b) and (c) C.R.S. 1973, 25-8-102
C.R.S. 1973, 25-8-202
C.R.S. 1973, 25-8-207
C.R.S. 1973, 31-15-710
NATURAL RESOURCES LOCAL AFFAIRS, DEPT. OF Local Government, Div. of
Because the state has preempted the field of water pollution control, Dacono cannot enact water pollution ordinances which conflict with state law, nor can it establish its own water pollution standards.