**William J. RISEN, Meredith Risen, and Robert (Bobby) Doll, Plaintiffs–Appellants,**

v.

**CUCHARAS SANITATION & WATER DISTRICT, a quasi-municipal corporation; Marshall J. Martin, in his individual and official capacity; Lawrence L. Skaggs, in his individual and official capacity; Gerald T. Van Nort, in his individual and official capacity; James E. Ellis, in his individual and official capacity; and Shella F. Snider, in her individual and official capacity, Defendants–Appellees.**

No. 00CA1067.

Colorado Court of Appeals, Division III.

April 26, 2001.

Certiorari Denied Oct. 1, 2001.

Lester, Sigmond, Rooney & Schwiesow, Erich Schwiesow, Alamosa, CO, for Plaintiffs–Appellants.

Collins, Cockrel & Cole, P.C., Paul C. Rufien, Denver, CO, for Defendants–Appellees.

Opinion by Judge MARQUEZ.

In this action arising out of the forcible connection of private properties to a sewer system, plaintiffs, William Jack Risen, Meredith Risen, and Robert Doll, appeal the summary judgment in favor of defendants, Cucharas Sanitation & Water District (the District) and Marshall J. Martin, Lawrence L. Skaggs, Gerald T. Van Nort, James E. Ellis, and Sheila F. Snider (Board Members). We affirm.

Plaintiffs own lots within the District that had individual septic tanks for disposal of sewage. An Amended Facilities Plan (Plan) for the District was commissioned by the Environmental Protection Agency (EPA). Based upon the Plan, subsequent communication among the District, EPA, and the Colorado Department of Health, Water Quality Control Division, and the recommendation of the District's expert engineering consultant, the District determined that certain connections to the system were required.

Pursuant to § 32–1–1006(1)(a)(I), C.R.S. 2000, the District adopted Resolution No. 97–05–01 determining that in order to protect the public health, it was necessary to connect all premises located within 400 feet of any public sewer to the District's central wastewater system. The District also adopted Resolution No. 97–05–02 directing that notice be provided to those owners of property within the District subject to mandatory connection, that connection would be compelled absent compliance with the applicable regulations. The District also notified all property owners within the District, including plaintiffs, that, "[t]o provide you with an opportunity to speak to the Board of Directors, a public hearing has been set...."

Plaintiffs filed a complaint seeking declaratory and injunctive relief, challenging the District's legal authority to compel the connection and to charge them associated fees. Plaintiffs also filed a motion for preliminary injunction, which, following a hearing, the trial court denied.

The majority of owners voluntarily complied and were connected to the system. However, plaintiffs refused and were connected involuntarily. The District assessed fees and charges, which were certified as delinquent taxes after plaintiffs refused to pay.

Plaintiffs filed an amended complaint adding claims under 42 U.S.C. § 1983 (1994 & Supp.1998) and claims for damages. Subsequently, defendants filed a motion for summary judgment, which the trial court granted

after incorporating all findings made at the preliminary injunction hearing.

## I.

■ Plaintiffs first contend that the trial court erred in granting summary judgment because, in their view, the District did not make a valid legislative determination of public health necessity; plaintiffs were not allowed to present certain evidence; and an individualized determination of necessity was required. We are not persuaded.

Summary judgment is appropriate if the pleadings and supporting documents demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Our review of a judgment granting a motion for summary judgment is *de novo*. *Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board*, 901 P.2d 1251 (Colo. 1995).

■ Special districts are political subdivisions of the state and are created as convenient agencies for exercising such of the governmental powers of the state as may be entrusted to them. *Johnson Homes, Inc. v. Southwest Metropolitan Water & Sanitation District*, 725 P.2d 12 (Colo.App.1986).

Section 32–1–1006(1)(a)(I) provides special powers and provisions for water and sanitation districts, including the power:

> To compel the owner of premises located within the boundaries of any such district, *whenever necessary for the protection of public health,* to connect such owner's premises, in accordance with the state plumbing code, to the sewer, water and sewer, or water lines, as applicable, of such district within twenty days after written notice is sent by registered mail, if such sewer or water line is within four hundred feet of such premises. (emphasis added)

Thus, under § 32–1–1006, the District has the authority, *inter alia,* to compel owners of certain premises to connect to the District's water and sewer lines. *Clare v. Florissant Water & Sanitation District*, 879 P.2d 471 (Colo.App.1994).

Further, pursuant to § 32–1–1001(1)(m), C.R.S.2000, which allows the District to "adopt, amend, and enforce bylaws and rules and regulations," the District had authority to adopt Resolution Nos. 97–05–01 and 97–05–02.

The "special districts" article, "being necessary to secure the public health, safety, convenience, and welfare, shall be liberally construed to effect its purposes." Section 32–1–113, C.R.S.2000.

■ Unless a governing body acts arbitrarily or capriciously, the determination that an ordinance is necessary for preservation of health and safety is binding upon a reviewing court. *See United States Disposal Systems, Inc. v. City of Northglenn*, 193 Colo. 277, 567 P.2d 365 (1977).

## A.

For several reasons we conclude that the District made a valid determination of public health necessity. First, it is undisputed that plaintiffs' properties are within 400 feet of the District's public sewer system and that plaintiffs received proper notice of the District's proceedings. Second, the District made specific findings in Resolution No. 97–05–01 concerning the health, safety, and welfare of the District's residents. Third, the District's legislative determinations are supported by studies and plans by various agencies and experts from the local, state, and federal governments.

As the trial court determined at the preliminary injunction hearing, the decision to create a central wastewater system and mandate connections was made by the District only after the EPA commissioned an "Amended Facilities Plan" and experts from the District, the EPA, and the Colorado Department of Health found that connections to the system must be made.

Taken together, these undisputed facts indicate that the District reasonably exercised its general powers to regulate the health, safety, and welfare of its residents, and the express powers granted by the General Assembly to regulate and compel connection. *See U S West Communications, Inc. v. City of Longmont*, 948 P.2d 509 (Colo.1997).

### B.

Plaintiffs claim they were not afforded the opportunity to present evidence concerning certain engineering studies and reports. However, the record indicates that plaintiffs had ample opportunity to present such evidence at the hearing on the preliminary injunction and, in fact, did so.

In reference to the studies presented, plaintiffs' counsel stated that he did not "expect the Court to sift through all that." When counsel stated that he had "certain areas and pages that [he] would direct the Court's attention to," the trial court specifically allowed him to do so. We agree with the trial court that plaintiffs focused on a series of EPA studies in 1990 and 1991, which, taken out of context, might have served plaintiffs' purpose. However, as the court noted, much evidence favored the District's conclusion, and the court would not second-guess the overall conclusions of the studies.

### C.

Furthermore, plaintiffs' contention that they are entitled to an individualized hearing on the necessity of requiring their specific connections is contrary to established law. *See Alperstein v. Three Lakes Water & Sanitation District,* 710 P.2d 1186 (Colo.App. 1985). In *Alperstein,* a division of this court held that due process did not require personal notice and an individual hearing before a sewer district could compel connections.

The division in *Alperstein* applied Colo. Sess. Laws 1971, ch. 247, § 32–10–117, a subsequently repealed statute, in upholding that district's legislative determination of necessity. Section 32–10–117(4) as then in effect was identical to the current § 32–1–1006(1)(a)(I), except that the former allowed a district to compel connection "if the board finds such connection necessary," while the latter allows it "whenever necessary." Plaintiffs attempt to distinguish *Alperstein* based upon this difference, asserting that the current statute requires a specific finding with regard to every individual property within the District's boundaries. We find no basis in the statute for such an assertion.

There is nothing in the plain language, "whenever necessary," that requires a hearing for each individual property. That language is even less supportive of plaintiffs' position than was the language of the statute considered in *Alperstein.* In our view, it is sufficient that the Board's determination of necessity was not made arbitrarily or capriciously, *see United States Disposal Systems, Inc. v. City of Northglenn, supra,* which, as noted above, it was not.

### II.

Plaintiffs also contend that § 32–1–1006 does not authorize a district to collect a tap fee, penalties, attorney fees, and interest in addition to the costs of making a forced connection. Specifically, plaintiffs contend that the only fees authorized are "the cost[s] of making the connection" under § 32–1–1006(1)(a)(I). We disagree.

Under § 32–1–1006(1)(a)(I), the board has the power to impose a "perpetual lien on and against the premises for the cost of making the connection." However, this provision does not by its terms preclude collection of other fees. And, other portions of the statute, as well as supporting rules and regulations, support imposition of the fees at issue here.

Section 32–1–1001(1)(j)(I), C.R.S.2000, authorizes a district to establish fees, penalties, and charges for services provided. Section 32–1–1101(1)(e), C.R.S.2000, provides that a district may certify delinquent fees, penalties, charges, and assessments to the county treasurer for collection.

Additionally, § 32–1–1001(1)(m) provides a special district with the power to "adopt, amend, and enforce bylaws and rules and regulations not in conflict with the constitution and laws of this state for carrying on the business, objects, and affairs of the board and of the special district." Under this authority, the District has also adopted the Rules and Regulations of the District. Regulation § 3.2 states that all costs and expenses of the installation and connection of sewer service lines shall be borne by the customer. Regulation § 4.5 states that the District will hold property owners liable for

all charges for sewer service, including, but not limited to, all charges for attorney fees and other costs of collection.

Section 32–1–1006(1)(g), C.R.S.2000, provides that a district has the power to "fix and from time to time to increase or decrease tap fees." Section 32–1–1006(1)(d), C.R.S.2000, gives a district the power to "assess reasonable penalties for delinquency in the payment of rates, fees, tolls, or charges or for any violations of the rules and regulations ... together with interest on delinquencies from any date due."

Furthermore, the District has adopted a Sewer Use Ordinance. Article V, § VII, provides that *all* costs and expenses incidental to the installation and connection of a sewer service line shall be borne by the owner(s). Article VI, § V provides that a tap fee shall be assessed for each new connection.

 In evaluating an ordinance promulgated for the health, safety, and welfare of the public, a reviewing court applies a presumption of reasonableness. An ordinance is reasonable when it fairly relates to the protection of the health, safety, and welfare of the public. *U S West Communications, Inc. v. City of Longmont, supra.*

 Whether the recital in a municipal ordinance that it is "necessary for the immediate preservation of the public peace, health or safety is true or not, is a legislative, and not a judicial question." *Fladung v. City of Boulder,* 160 Colo. 271, 275, 417 P.2d 787, 789 (1966)(quoting *Shields v. City of Loveland,* 74 Colo. 27, 218 P. 913 (1923)).

Plaintiffs, however, contend that a tap fee applies only where a request for connection is made. We disagree.

Although plaintiffs cite the District's Sewer Use Ordinance, that ordinance does not use the word "only" as plaintiffs imply. Thus, we see no contradiction between the ordinance and § 32–1–1006(1)(g), which expressly allows for tap fees without any requirement that they be in the context of voluntary connections. In any event, if there were a conflict, § 32–1–1006(1)(g) would supersede the ordinance.

In *Wasson v. Hogenson,* 196 Colo. 183, 185, 190, 583 P.2d 914, 915, 919 (1978), the supreme court treated tap fees as "installation charges" for making sewer services available to the real estate, and held that the "charges" constitute a " 'perpetual lien' against the property served." A division of this court has followed that interpretation. *See North Washington Water & Sanitation District v. Majestic Savings & Loan Ass'n,* 42 Colo.App. 158, 594 P.2d 599 (1979).

Further, the District submitted the affidavit of one of its board members stating that, "Tap fees charged to Plaintiffs were consistent with the District's Rules and Regulations. Such fees are charged uniformly to all connections with the District's sewer system."

Additionally, the contention that tap fees may only be assessed upon voluntary connection would reward those who resist connection by limiting their liability to costs for physical connection, while punishing property owners within the District who voluntarily connected by essentially burdening them with supporting the costs of the service.

 Consequently, contrary to plaintiffs' contentions, we conclude that a "tap fee" is included in "the cost of making the connection" to a sewer or water system. *See Perl–Mack Enterprises Co. v. City & County of Denver,* 194 Colo. 4, 568 P.2d 468 (1977)(a tap fee is a one-time charge for a new connection to a sewer system); *Western Heights Land Corp. v. City of Fort Collins,* 146 Colo. 464, 362 P.2d 155 (1961)(ordinances levying a tap fee for cost of making sewer and water connections were not invalid); *Johnson Homes, Inc. v. Southwest Metropolitan Water & Sanitation District, supra* (when property connects to a district's sewer lines, a district can collect a tap fee for use of its facilities).

Therefore, we conclude that it was permissible for the District to impose tap fees and the other reasonable penalties, attorney fees, and interest upon plaintiffs.

### III.

 Plaintiffs finally contend that the trial court erred in denying them recovery under 42 U.S.C. § 1983 where, in their view,

the District violated their civil rights by using its governmental power to certify for collection as delinquent taxes amounts to which it was not entitled. We disagree.

■ In order to state a claim for relief under § 1983, a plaintiff must allege that: (1) the defendant acted under color of state law; and (2) the defendant's conduct deprived the plaintiff of a right secured by the federal constitution or federal laws. *See State v. Nieto*, 993 P.2d 493 (Colo.2000); *State v. DeFoor*, 824 P.2d 783 (Colo.1992).

In view of our disposition above, we perceive no violation of federal rights. Consequently, the trial court properly granted summary judgment on plaintiffs' federal claims.

Accordingly, the judgment is affirmed.

NEY and NIETO, Judges, concur.